# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-3099

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GARY R. GEORGE,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03-CR-259—**Rudolph T. Randa**, *Chief Judge.*

———————

ARGUED FEBRUARY 17, 2005—DECIDED APRIL 4, 2005

———————

Before EASTERBROOK, RIPPLE, **and** MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Gary George served in Wisconsin's Senate for 23 years, acquiring considerable influence over public expenditures. He was indicted in 2003 on charges that he accepted kickbacks in exchange for exercising that influence, which extended over federal grants as well as programs financed by state revenues. He pleaded guilty to violating 18 U.S.C. §371 (conspiracy to defraud the United States) as part of a bargain in which the

prosecutor dismissed all other charges, and he was sentenced to 48 months' imprisonment plus about $614,000 in restitution.

Four months after pleading guilty, George moved to dismiss the single count of conviction under Fed. R. Crim. P. 12(b)(3)(B) for failure to state an offense. Relying on *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998), George contended that the events narrated in the indictment did not violate 18 U.S.C. §1346 by depriving Wisconsin of his honest services. This motion is more than a little odd. By pleading guilty a defendant normally surrenders an opportunity to contest the merits, waiving (not just forfeiting) all arguments that could have been raised earlier. See *United States v. Broce*, 488 U.S. 563 (1989). And the plea agreement in this case made that explicit: ¶25 waives all matters that could have been raised by pretrial motion. Failure of the indictment to state an offense is such a matter.

Actual innocence might supply a "fair and just reason" to withdraw a guilty plea, see Fed. R. Crim. P. 11(d)(2)(B), but George did not move to withdraw his plea in order to set the stage for a motion to dismiss—for withdrawal would have allowed the prosecutor to reinstate the remaining charges, including two counts under 18 U.S.C. §666 and one under 18 U.S.C. §1956(a)(1)(B)(i), none of which entailed honest-services fraud. (And George *had* pleaded guilty; his contention that the district judge failed to accept his plea is incorrect and need not be discussed.)

A district judge has discretion under Fed. R. Crim. P. 12(b)(3)(B) "at any time while the case is pending . . . [to] hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense". A judge might elect to use this discretion to treat a motion such as the one George made as a request to withdraw the plea and dismiss the contested charge—though relieving the defendant of the concessions he made would relieve the prosecu-

tor of the reciprocal concessions and reinstate the other charges. The district judge did not abuse his discretion in denying George's motion, however. It was made late in the day (only two weeks before sentencing) and rested on a misunderstanding. The count to which George pleaded guilty did not depend on §1346. It charged him with conspiring to defraud the United States, *not* with depriving Wisconsin of his honest services. Mail fraud was just one of the means employed in the scheme. The district judge sensibly perceived that George was trying to smuggle an objection to the sufficiency of the evidence (which Rule 12(b)(3)(B) does not cover) into the proceeding under the guise of a challenge to the charge's statutory footing.

George submits that his sentence violates the sixth amendment, as the Supreme Court explained it in *United States v. Booker*, 125 S. Ct. 738 (2005). Yet the district judge understood the sixth amendment problem, for sentencing occurred after our opinion in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), which the Supreme Court affirmed last January. The judge proceeded as if the Sentencing Guidelines were defunct, so that he had discretion to select any term within the statutory limits of zero to 60 months. Had the court followed the Guidelines, it would have sentenced George to the statutory maximum— for the sentencing range was 63 to 78 months, and George does not contend that there was any basis for a downward departure.

The Supreme Court's decision in *Booker* shows that the Guidelines continue to inform district judges' decisions. Judges need not rehearse on the record all of the considerations that 18 U.S.C. §3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less. That's the approach we have taken for decisions to reimprison a person after revoking supervised release, a subject on which the Guidelines always have been advisory rather than binding. See *United States v. Salinas*, 365 F.3d 582, 588-90 (7th

Cir. 2004); *United States v. Hale*, 107 F.3d 526, 529-30 (7th Cir. 1997). It makes sense to follow the same approach for the Guidelines as a whole in *Booker*'s wake. Chief Judge Randa explained his decision. Had he known that the Guidelines continue to have substantial sway, he might have imposed a sentence closer to 60 months; it is inconceivable that anticipation of the ongoing need to start from and respect the Guidelines' framework would have led to a lower sentence. Any error therefore was harmless. See Fed. R. Crim. P. 52(a).

George does not contend that his actual sentence is unreasonable, the post-*Booker* standard of appellate review. It is hard to conceive of below-range sentences that would be unreasonably high. George's is not. The United States would have better claim to be the party aggrieved by the district judge's disposition, and it has not appealed.

Restitution poses a more complex problem. George's contention that *Booker* requires juries rather than judges to assess restitution is misguided. There is no "statutory maximum" for restitution; indeed, it is not a criminal punishment but instead is a civil remedy administered for convenience by courts that have entered criminal convictions, see *United States v. Bach*, 172 F.3d 520, 523 (7th Cir. 1999); *United States v. Newman*, 141 F.3d 531, 537-42 (7th Cir. 1998), so the sixth amendment does not apply. We have accordingly held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), does not affect restitution, see *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000), and that conclusion is equally true for *Booker*.

Still, restitution must be calculated in accord with statutory rules, and we cannot be confident that the district judge did so. The presentence report and witnesses who testified at a hearing offered different estimates of appropriate restitution, with the low end around $200,000 and the high end around $900,000. Choice depended on a num-

ber of variables, such as whether to treat George's gains as a proxy for the sums diverted from the public programs and what value to assign to time that public employees and private contractors devoted to providing campaign aid, accounting help, and other services to George personally. George contended that the answer is zero because employees put in full days on the job, so that the public lost nothing; the prosecutor denied this and added that if workers were willing to pull overtime they should have done so for public rather than private benefit.

The district judge chose $613,746.36 as the amount of restitution but did not make findings of fact or articulate his reasons. Although Fed. R. Civ. P. 52(a) does not apply directly to restitution, even though it is fundamentally a civil remedy awarded after a bench trial, Circuit Rule 50 does require an explanation for all appealable orders. When the district judge omits findings about contested amounts of restitution, it may be impossible to tell whether the legal rules have been applied correctly. *United States v. Menza*, 137 F.3d 533, 538 (7th Cir. 1998), holds that a remand for findings is essential when the reasoning may be important yet cannot be recovered from the record. See also, e.g., *United States v. Walton*, 217 F.3d 443, 452 (7th Cir. 2000); *United States v. Minneman*, 143 F.3d 274, 285-86 (7th Cir. 1998). A remand would be pointless if it were clear what the award represents, see *United States v. Ahmad*, 2 F.3d 245, 246-47 (7th Cir. 1993); *United States v. Mahoney*, 859 F.2d 47, 49-50 (7th Cir. 1988), but this sum does not come from any combination of items listed in the presentence report. Both the presentence report and the testimony at the hearing explore a number of possibilities, some of which provide good bases of restitution and some of which do not. We cannot tell which the judge selected and therefore cannot tell whether all items (whatever they were) that went into the award are legally appropriate.

Restitution must be based on the victim's loss rather than the offender's gain. Compare *United States v. Shepard*, 269 F.3d 884 (7th Cir. 2001) (restitution based on victim's loss), with *United States v. Genova*, 333 F.3d 750 (7th Cir. 2003) (forfeiture of offender's gains). "Loss" means direct injury, not consequential damages. See *Shepard*, 269 F.3d at 886-87. Moreover, the only loss that counts is that caused by the count of conviction, unless the defendant agrees to pay more, which George did not. See 18 U.S.C. §3663A(a); *Hughey v. United States*, 495 U.S. 411 (1990); *United States v. Peterson*, 268 F.3d 533 (7th Cir. 2001). One scheme to defraud may have multiple victims, and the statute allows an award on account of all victims' direct injuries, see §3663A(a)(2); *United States v. Mitrione*, 357 F.3d 712, 721 (7th Cir. 2004), but *Hughey* requires the court to exclude injuries caused by offenses that are not part of the scheme of which George has been convicted.

The presentence report invited consideration of amounts that are inappropriate under one or more of these rules. It covered the events underlying all five counts of the indictment, even though George pleaded guilty to just one. It tried to tote up George's gains, though these may differ from the victim's losses. It assumed that the State of Wisconsin is the victim, though the crime of which George has been convicted is conspiring to defraud the United States. Witnesses at the evidentiary hearing likewise made one or more of these errors. Perhaps Wisconsin should be treated as an additional victim under §3663A(a)(2) because it lost the benefit of funds provided by the United States, but this possibility must be explored with care rather than assumed to be true.

Restitution of $614,000 may or may not be right; we just cannot tell. Accordingly we vacate that portion of the judgment and remand with instructions to receive written submissions from the parties addressing the considerations we have mentioned, and then make findings and conclu-

sions based on the existing record. The conviction and sentence of imprisonment are affirmed.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*