**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued December 14, 2005
Decided March 2, 2006

Before

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-1368

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *Plaintiff-Appellee*, | |
| v. | No. 04 CR 128 |
| ALLAN SANKEY, | **BARBARA B. CRABB**, *Chief Judge*. |
| *Defendant-Appellant*. | |

O R D E R

Allan Sankey was convicted of making a materially false statement to the Farm Service Agency ("FSA"), a part of the United States Department of Agriculture, in connection with a loan. *See* 18 U.S.C. § 1014. His sole contention on appeal is that his 21-month prison sentence is unreasonable. For the reasons discussed in this order, we do not find his sentence to be unreasonable and, accordingly, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.  Facts

On October 6, 2000, Mr. Sankey obtained a $110,000 loan from the Farm Service Agency to refinance his existing cattle stock and purchase new cattle and equipment for the dairy farm that he leased from his father, Greg Sankey.[1]  As security for the loan, Mr. Sankey pledged a variety of farming equipment and personal property that altogether was valued at $135,700.  He promised not to sell the security without prior FSA approval, and agreed that any property that he acquired in the future would become additional security on the loan.

On October 24, 2001, an FSA loan officer inspected Mr. Sankey's farm and discovered a variety of farming equipment not itemized in the existing security agreement.  The inspector testified at trial that Mr. Sankey told her that he had purchased this equipment.  Pursuant to the terms of his loan agreement, Mr. Sankey executed a revised security agreement pledging the additional equipment as collateral.  It is this revised agreement that underlies Mr. Sankey's conviction.

The FSA continued its inspections after discovering the additional farm equipment, and, by early the following summer, the agency concluded that Mr. Sankey was selling or hiding his pledged cattle.  After deciding to seize the remaining collateral to protect its interests, the FSA sent Mr. Sankey a letter on July 1, 2002, in which it asked that he voluntarily agree to liquidate the remaining property.  The letter incorporates a list of the items, including the equipment discovered the previous October.  The first response the FSA received was from Greg's attorney.  Counsel had photocopied the list of property included in the FSA's letter and added the notation that none of the equipment on the farm was subject to the security agreement because all of it was owned by Greg and only leased to Mr. Sankey.  Mr. Sankey then responded separately by mailing the FSA a copy of this communication from his father's attorney, adding his initials and the handwritten comment, "I'm sorry for all the troubles that I've caused."  Trial Tr.I at 56.

### B.  District Court Proceedings

Mr. Sankey was indicted in August 2004 on one count of converting property that had been pledged to the FSA as security on a loan, *see* 18 U.S.C. § 658, and three counts of making materially false statements in order to influence the actions of the FSA, *id*. § 1014.  Counts two and three of the indictment, both § 1014 counts, concerned the loan application and original

---

[1] To ease confusion, we will refer to Allan Sankey's father, Greg Stankey, simply as "Greg" in this order.

security agreement, respectively, which list nine pieces of farm equipment that the Government alleged actually belonged to Greg Sankey. In November 2004, a jury found Mr. Sankey guilty only on Count four, which alleged that he made a false statement in connection with the revised security agreement executed after the October 2001 inspection; it acquitted him on the other three counts.

At trial, Greg testified that he owned nearly every piece of farm equipment pledged in the revised security agreement and maintained that he did not give Mr. Sankey permission to pledge the equipment as security. Instead, according to Greg's testimony, he leased the equipment to Mr. Sankey with an option to purchase it after the lease term expired. The lease agreement, according to Greg, was memorialized in writing.

Mr. Sankey testified in his own defense that, in fact, he did have his father's permission to post the equipment as collateral. He insisted that the written lease did not reflect his actual agreement with his father, which was to purchase the equipment. Mr. Sankey attributed his father's contrary testimony to the latter's health and poor memory. He denied initialing the language that his father's attorney had added to the copied portion of the FSA's letter. The FSA, he testified, lifted his initials from older documents and added them to his response to the letter by photocopying the documents together.

During its deliberations the jury sent a note to the court asking, "Hypothetically, if we find the defendant not guilty on all counts, will there still be a requirement for the defendant to pay back the defaulted loan proceeds?" Trial Tr.II at 106-07. The district judge discussed the question with counsel and stated that she intended to answer, "Whether defendant is required to pay back the loan proceeds is not a matter for you to consider." *Id*. at 107. Mr. Sankey's counsel asked that the court instead respond that he was paying back the loan and intended to continue doing so. Counsel explained that he was concerned that the jury would be reluctant to acquit Mr. Sankey if it thought that an acquittal would relieve him of his obligation to repay the loan. The court denied the request, and issued its intended response. The jury then returned a guilty verdict on Count four, acquitting Mr. Sankey on the other three counts. In response to a specific sentencing allegation, the jury found that the total loss to the FSA was between $30,000 and $70,000.

Mr. Sankey filed a posttrial motion for a judgment of acquittal. He contended that the court should have instructed the jury that he would remain liable for the loan amount regardless of the jury's verdict. The district court denied the motion, reasoning that Mr. Sankey's belief that the jury convicted him to ensure repayment of the loan was merely conjecture and that the jury's verdict could be overturned only if "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." R.29 at 2.

At sentencing, the district court adopted the guidelines calculation in the presentence report. In that report, the probation officer started with a base offense level of seven and added six levels due to the amount of loss. U.S.S.G. § 2B1.1(a), (b)(1)(D). The probation officer also applied a two-level increase under U.S.S.G. § 3C1.1 for obstruction of justice, explaining that

Mr. Sankey perjured himself by testifying that he never initialed his father's response to the FSA's letter and that his agreement with his father was to purchase, not lease, the farm equipment. Mr. Sankey did not raise an objection to any of these findings. The resulting total offense level of 15, combined with Mr. Sankey's Category II criminal history, yielded a guidelines imprisonment range of 21 to 27 months.

Because Mr. Sankey was sentenced in February 2005, after the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), the district court declared that it would "consult the guideline calculations prepared by the probation office . . . and the statutory purposes of sentencing, as set out in 18 United States Code, Section 3553(a)." Sent. Tr. at 12. Citing the loss amount and Mr. Sankey's obstruction of justice, the court imposed a prison term of 21 months, the bottom of the calculated guidelines range. The court also sentenced Mr. Sankey to 5 years' supervised release and restitution of $71,328.49.

## II

## DISCUSSION

Mr. Sankey's sole contention on appeal is that his prison sentence is unreasonable. He argues that the district court was compelled to be more lenient in light of what he characterizes as the jury's inconsistent verdicts, the jury's question to the court and the court's answer, and the "breakdown in family relations and communications" that, according to Mr. Sankey, is the reason he ended up being charged with a crime.[2] The Government responds that Mr. Sankey cannot predicate a reasonableness challenge on any of these points because he did not cite them in the district court as reasons for a sentence below the guidelines range. Although we conclude that Mr. Sankey did voice these themes at sentencing, he did so only obliquely; they were hardly his "principal argument," and so the district court was not required to elaborate in rejecting them. See United States v. Cunningham, 429 F.3d 673, 679 (7th Cir. 2005). Moreover, while we

---

[2] Specifically, Mr. Sankey first contends that the jury acquitted him on two other counts that are substantively identical to the count of conviction. According to Mr. Sankey, the jury's rendering of inconsistent verdicts on counts with the same underlying elements shows that the jury did not believe he was guilty of the charged offense. He argues that the jury must have convicted him on a single count because it was concerned that he would not be required to repay the loan proceeds if he were acquitted on every count. Secondly, Mr. Sankey characterizes the jury's question to the court as to whether he would be held accountable for the outstanding balance on the loan as an indication that the jury was only concerned that he be held accountable for the loan. He argues that the court's answer to the jury failed to address that concern and effectively encouraged it to convict him. Finally, Mr. Sankey attributes the events underlying his conviction to a falling out among his family members. Mr. Sankey contends that these factors required the district court to be more lenient in imposing his sentence.

disagree with the Government's forfeiture argument, we nevertheless must conclude that Mr. Sankey's contentions are largely irrelevant here because he misunderstands the sentencing process.

We have articulated clearly the steps a district court must take to impose a presumptively reasonable sentence, and the factors the defendant must address in order to challenge that presumption. The first step for a district court after *Booker*, just as before, is to calculate correctly the guidelines range. *See United States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005); *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005). Even though the guidelines are no longer binding on sentencing courts, they "continue to inform district judges' decisions." *George*, 403 F.3d at 472; *see also United States v. Alburay*, 415 F.3d 782, 786 (7th Cir. 2005). Accordingly, the district court must perform the calculation correctly so that it can be "a meaningful guide in the district court's imposition of a final sentence." *United States v. Baretz*, 411 F.3d 867, 877 (7th Cir. 2005). The court must review the sentencing factors in § 3553(a) when determining its discretionary sentence, *United States v. Newsom*, 428 F.3d 685, 687 (7th Cir. 2005), but need not detail its statutory analysis on the record so long as the sentence is within the guidelines range. *George*, 403 F.3d at 472-73. Sentencing courts need only provide enough of an analysis to demonstrate that they "considered the § 3553 factors relevant to the calculation of the defendant's sentence and that the application of those factors to the facts of the case was not unreasonable." *United States v. Vaugh*, 433 F.3d 917, 924 (7th Cir. 2006) (citation omitted). If the sentence is above or below the guidelines range then a district court must "explain why . . . this defendant deserves more or less." *George*, 403 F.3d at 472-73. The further the sentence is from the guidelines range, the more thorough that explanation must be. *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). On appeal, we review the sentence for reasonableness. *Alburay*, 415 F.3d at 786. If the sentence is within the properly calculated guidelines range, then we presume it is reasonable, and the defendant may rebut this presumption "only by demonstrating that his or her sentence is unreasonable when measured against the factors set forth in § 3553(a)." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).

Here, Mr. Sankey repeats a variety of reasons that he offered the district court in asking for leniency. Many of his contentions concern the district court's handling of the trial and have little to do with § 3553(a). Those matters that properly deal with the sentencing process were appropriately considered by the district court. As the Government points out, because the Government carefully followed the remedial approach of *United States v. Booker*, 543 U.S. 220 (2005), it was not necessary for the jury to have found beyond a reasonable doubt that Mr. Sankey obstructed justice. With respect to his family situation, the district court listened to defense counsel's comments before imposing the sentence. It is clear that the district court was not required to impose a sentence below the guidelines range.

Our role is not to decide whether a lower sentence *could* be a reasonable sentence; instead, we must determine whether the district court adequately explained its rationale so to allow us to find that the court's exercise of discretion was reasonable. *Cunningham*, 429 F.3d at 679; *United States v. Castro-Juarez*, 425 F.3d 430, 433 (7th Cir. 2005). Despite his counsel's best attempts to portray him and the circumstances of his crime in the most sympathetic light

possible, nothing in this record convinces us that the district court failed to account for its decision or that it was *required* to grant Mr. Sankey greater leniency for any reason. Indeed, Mr. Sankey has only undermined his cause by misrepresenting the record in his brief. He says that this "is not a case where the defendant had any history of criminal wrongdoing," Defendant's Br. at 10, but Mr. Sankey has four prior convictions, including one for fraud. Given a full--and accurate--accounting of the information before the district court, we cannot say that Mr. Sankey's sentence is unreasonable.

## Conclusion

Mr. Sankey's sentence was within the range calculated by the probation office, as adopted by the district court, and he has not shown any error in that calculation. His mere assertion that the court was insufficiently swayed by the circumstances of the offense is not enough to rebut the presumption of reasonableness.

For the forgoing reasons, the sentence imposed by the district court is affirmed.

AFFIRMED