In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1198

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSE CHAGOYA-MORALES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cr-00124-1 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED OCTOBER 28, 2016 — DECIDED JUNE 9, 2017

Before RIPPLE, KANNE, and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Jose Chagoya-Morales was charged
with illegally reentering the United States after deportation,
in violation of 8 U.S.C. § 1326(a) and 6 U.S.C. § 202(4). He en-
tered a conditional plea of guilty; the district court sentenced
him to forty-eight months' imprisonment. He now contends
that the district court should have conducted an evidentiary
hearing before denying his motion to suppress information
related to his identity and his status as an illegal resident of

the United States. Mr. Chagoya-Morales also challenges two aspects of his sentence: (1) whether the district court correctly increased his offense level by sixteen levels under the "crime of violence" enhancement in U.S.S.G. § 2L1.2(b)(1)(A)(ii); and (2) whether his forty-eight month sentence was procedurally sound and substantively reasonable.

We affirm the judgment of the district court in all respects. The court correctly denied the motion to suppress; under these circumstances, the Fourth Amendment does not prohibit a police officer from requiring a person to identify himself, nor does it guarantee a defendant the right to conceal who he is during a criminal prosecution. The district court also correctly applied the career offender enhancement because Mr. Chagoya-Morales's prior Illinois aggravated robbery conviction is a crime of violence under U.S.S.G. § 2L1.2(b). Finally, the imposed sentence is procedurally sound and substantively reasonable. The district court correctly calculated Mr. Chagoya-Morales's guidelines range and appropriately justified a downward variance based on the relevant factors under 18 U.S.C. § 3553(a).

# I

## BACKGROUND

### A.

Mr. Chagoya-Morales, a native and citizen of Mexico, illegally entered the United States sometime prior to April 2008. On April 9 of that year, the Circuit Court of Cook County, Illinois, convicted him of aggravated robbery and imposed a sentence of six years' imprisonment. Several months later, however, in August 2009, the federal government deported

him to Mexico. After his removal, Mr. Chagoya-Morales did not obtain permission to reenter the United States.

On January 16, 2015, officers with the Chicago Police Department ("CPD") conducted a traffic stop on a vehicle in which Mr. Chagoya-Morales was a passenger. Police reports indicate that the driver of the car, Cynthia Deantes, was stopped because the officers allegedly observed her using her cell phone while driving. As the officers approached Deantes's car, they smelled a strong odor of cannabis emanating from the vehicle, conducted a pat down search of Mr. Chagoya-Morales, and recovered a small plastic bag containing a small amount of marijuana from his sock. The officers then arrested Mr. Chagoya-Morales.

At the police station, officers advised Mr. Chagoya-Morales of his *Miranda* rights and continued to question him. When the officers learned that Mr. Chagoya-Morales was in the country illegally and that he previously had been deported due to a past felony conviction, they contacted Immigration and Customs Enforcement. On March 11, 2015, a federal grand jury returned a one-count indictment, charging Mr. Chagoya-Morales with illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a) and 6 U.S.C. § 202(4).[1] The record before us contains no indication that he was prosecuted for marijuana possession.

---

[1] The district court's jurisdiction was predicated on 18 U.S.C. § 3231.

**B.**

Mr. Chagoya-Morales filed a motion to suppress. He contended that the traffic stop was illegal and that therefore the Government's knowledge of his name and his immigration status should be suppressed as "fruit of the poisonous tree."[2] To support his motion, Mr. Chagoya-Morales attached an affidavit of Deantes, the driver of the vehicle. Deantes and Mr. Chagoya-Morales maintained that the police officers had no reason to stop the vehicle: Deantes was not using her cell phone while driving; she was not accused of committing any other offenses; and there was no outstanding warrant for Mr. Chagoya-Morales.

After considering the parties' briefs, the district court denied the motion to suppress. Basing its decision on *United States v. Garcia-Garcia*, 633 F.3d 608, 616 (7th Cir. 2011), the court explained:

> The Seventh Circuit has already rejected such a legal argument, explaining that "[t]he body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *United States v. Garcia-Garcia*, 633 F.3d 608, 616 (7th Cir. 2011) (internal quotations omitted) (quoting *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984)). The Seventh Circuit has made clear that a person "having previously been deported, and not having obtained the consent of the Attorney General" or

---

[2] R.17 at 2–3.

> Secretary of Homeland Security "to return, is a person whose presence in this country, without more, constitutes a crime," and that "[h]is identity may not be suppressed."[3]

Since the evidence at issue could not be suppressed, the court saw no reason to hold an evidentiary hearing on the motion to suppress. It was irrelevant whether the traffic stop was legal.

Mr. Chagoya-Morales entered a conditional plea of guilty in which he admitted that he illegally had reentered the United States after a previous removal. The plea agreement specifically preserved his right to appeal the denial of his motion to suppress.

## C.

Mr. Chagoya-Morales's plea agreement contained a preliminary calculation of his sentencing guidelines range. The agreement outlined that, pursuant to § 2L1.2(b)(1)(A)(ii) of the Guidelines, Mr. Chagoya-Morales's base offense level of eight would be increased by sixteen levels because he previously was removed after being convicted of a felony that constituted a crime of violence. The plea agreement also preserved Mr. Chagoya-Morales's right to appeal any issues related to sentencing.

In the Presentence Investigation Report ("PSR"), the probation officer agreed with the preliminary determination in

---

[3] R.21 at 1.

the plea agreement. The report concluded that Mr. Cha-goya-Morales qualified for the sixteen-level enhancement under § 2L1.2(b)(1)(A)(ii) of the Guidelines because he had a felony conviction under Illinois law for aggravated robbery. Mr. Chagoya-Morales objected to this enhancement. He argued that, because aggravated robbery "is not specifically listed as a 'crime of violence' in FSG § 2L1.2, application note 1(B)(iii), it must satisfy the definition in the 'force clause' of § 2L1.2."[4] In his view, aggravated robbery did not constitute a crime of violence under the "force clause" because it did not have as one of its elements the use, attempted use, or threatened use of force.

At his sentencing hearing, Mr. Chagoya-Morales reiterated this objection. The Government countered that the underlying aggravated robbery indictment had charged him with committing a robbery "by the use of force or by threatening the imminent use of force while indicating verbally or by [his] actions … that [he] w[as] presently armed with a firearm or other dangerous weapon."[5] Such a crime, continued the Government, falls within the force clause's scope. The Government further contended that because the commentary to § 2L1.2 explicitly "defines crime of violence to include robbery," there was "no question that … aggravated robbery" implicates the same enhancement.[6]

---

[4] R.31 at 4.

[5] R.47 at 13.

[6] *Id.* at 14.

The district court concluded that the sixteen-level en-hancement was applicable because aggravated robbery in-volved the "threatened use of physical force."[7] Specifically, the district court explained:

> Illinois law defines a robbery as when a per-son—and this is in quotation mark[s]—know-ingly takes property, … from the person or pres-ence of another by the use of force or by threat-ening the even use of force, end of quotation mark. Once again, the citation 720 ILCS 5/18-1.
>
> …
>
> And Illinois law, when you look at 720 ILCS 5/18-1, has small b, 1 and 2. In 2, it talks also about a person commits aggravated robbery when he or she knowingly takes property from the person or presence of another by delivering, and in parenthetical, various words to the vic-tim without his or her consent or by threat or deception, comma, and for other [] th[a]n medi-cal purposes, any controlled substance. Small b has also part one. A person commits aggravated robbery when he or she violates Subsection A while indicating verbally or by his or her actions to the victim that he or she presently armed with a firearm or other dangerous weapon in-cluding a knife, club, ax or bludgeon. This of-fense shall be applicable even though it is later determined that he or she had no firearm or

---

[7] *Id.* at 15.

> other dangerous weapon including a knife,
> club, ax or bludgeon in his or her possession
> when he or she committed the robbery.[8]

Based on this analysis, the district court agreed with the PSR's calculations, which set Mr. Chagoya-Morales's base offense level at eight, § 2L1.2(a), and applied a sixteen-level enhancement for deportation after a felony conviction for a crime of violence, U.S.S.G. § 2L1.2(b)(1)(A)(ii). Mr. Chagoya-Morales also received a three-level deduction for acceptance of responsibility. U.S.S.G. § 3E1.1(a), (b). The resulting Guidelines range was fifty-seven to seventy-one months' imprisonment.

Based on its evaluations of the factors set forth in 18 U.S.C. § 3553(a), the district court ultimately sentenced Mr. Chagoya-Morales to forty-eight months' imprisonment, nine months below the low end of the Guidelines range. The district court explicitly considered several factors, including Mr. Chagoya-Morales's arguments that he had a difficult childhood, had not been involved in a gang for a number of years,[9] and was not committing a serious crime at the time of the traffic stop. The court also considered Mr. Chagoya-Morales's claim that his status as an illegal immigrant subjected him to more restrictive conditions of confinement. The court also gave weight to the nature and seriousness of the offense, the need to deter Mr. Chagoya-Morales and others, and the

---

[8] *Id.* at 15–16.

[9] Mr. Chagoya-Morales previously admitted to being a member of a gang.

need to protect the public. Mr. Chagoya-Morales now appeals his conviction and sentence.[10]

## II

## DISCUSSION

Mr. Chagoya-Morales renews his claim that the district court erred in denying his motion to suppress without holding an evidentiary hearing. He also submits that the district court improperly applied the "crime of violence" enhancement. In his view, his prior aggravated robbery conviction does not qualify as a "crime of violence" following the Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*"). Finally, Mr. Chagoya-Morales asserts that his forty-eight month sentence is unreasonable because the district court's reasoning is inconsistent with the factors set forth in § 3553(a). We address these issues in turn.

## A.

We first examine Mr. Chagoya-Morales's argument that the district court erred in denying his suppression motion without a hearing. In his view, a hearing would have allowed him to develop evidence to support his contention that the officers' stop of the vehicle was not justified. He submits that, if the district court had held such a hearing and determined that the stop was illegal, the court would have suppressed information about his identity and his status as an illegal resident

---

[10] Our jurisdiction is predicated on 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

of the United States, the information that led to the present charges.

The procedural and substantive standards governing our review of the denial of a motion to suppress are well-established. We decide legal questions de novo and review factual findings for clear error. *United States v. Garcia-Garcia*, 633 F.3d 608, 612 (7th Cir. 2011).[11] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The exclusionary rule is the primary judicial remedy to deter Fourth Amendment violations. *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961)). The exclusionary rule, which permits trial courts to exclude unlawfully seized evidence, encompasses both the "primary evidence obtained as a direct result of an illegal search or seizure" and "evidence later discovered and found to be derivative of an illegality," the so-called "'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804 (1984). Because the exclusionary rule carries "significant costs," the Supreme Court has held it to be applicable only "'where its deterrence benefits outweigh its substantial social costs.'" *Strieff*, 136 S. Ct. at 2061 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). "Suppression of evidence … has always been our last resort, not our first impulse." *Id.* (omission in original) (quoting *Hudson*, 547 U.S. at 591).

---

[11] *See also United States v. Groves*, 470 F.3d 311, 317–18 (7th Cir. 2006); *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000).

Application of these principles to the situation before us presents a somewhat unique question because Mr. Chagoya-Morales is asking that we suppress information that permitted law enforcement to determine his correct identity and, with that information, to then ascertain that he was within the United States without permission after having been removed at an earlier time. Mr. Chagoya-Morales frankly notes that, in *Garcia-Garcia*, 633 F.3d 608, we relied on the Supreme Court's holding in *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984), and said, albeit in *dicta*, that even absent probable cause, suppression of a defendant's identity is not an available remedy in a criminal proceeding:

> [E]ven a successful challenge to the stop would not result in the suppression of the most important evidence that [the defendant] seeks to exclude. "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984). *See also Gutierrez-Berdin v. Holder*, 618 F.3d 647, 656 (7th Cir. 2010) (same). [The defendant], having previously been deported, and not having obtained [permission] to return, is a person whose presence in this country, without more, constitutes a crime. His identity may not be suppressed even if it was obtained in violation of the Fourth Amendment.

*Id.* at 616 (parallel citations omitted).

Mr. Chagoya-Morales asks us to reevaluate the scope of this statement because a minority of circuits to confront the issue do not believe that *Lopez-Mendoza* stands for such a broad proposition.[12] Those circuits have concluded that, rather than "creat[ing] an evidentiary rule insulating specific pieces of identity-related evidence from suppression," *Pretzantzin v. Holder*, 736 F.3d 641, 646–47 (2d Cir. 2013), *Lopez-Mendoza* follows a "long-standing" principle that "an illegal arrest does not divest the trial court of jurisdiction over the defendant or otherwise preclude trial," *id.* at 648. Mr. Chagoya-Morales focuses precisely on the statement that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039. He asks us to recognize that the Supreme Court made this statement in the context of a civil deportation, not a criminal case and, just as importantly, that the Court was dealing with the suppression of jurisdictional, not evidentiary facts.

As we just have noted,[13] Mr. Chagoya-Morales's argument has been accepted by some circuits that have confronted this problem. In the view of those courts, the Supreme Court's statement in *Lopez-Mendoza* is indeed limited to the suppression of jurisdictional facts and whether evidentiary facts ought to be suppressed is governed by the usual rules of the suppression doctrine and any abrogation of those rules would

---

[12] *See, e.g., Pretzantzin v. Holder*, 736 F.3d 641, 646–47 (2d Cir. 2013); *United States v. Oscar-Torres*, 507 F.3d 224, 228 (4th Cir. 2007); *United States v. Flores-Sandoval*, 474 F.3d 1142, 1147 (8th Cir. 2007); *United States v. Olivares-Rangel*, 458 F.3d 1104, 1106 (10th Cir. 2006).

[13] *See supra* note 12.

be subject to the well-known analysis in *Brown v. Illinois*, 422 U.S. 590 (1975). That analysis considers: "the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search," "'the presence of intervening circumstances,'" and "'the purpose and flagrancy of the official misconduct.'" *Strieff*, 136 S. Ct. at 2062 (quoting *Brown*, 422 U.S. at 603–04). This third factor is "particularly" significant. *Id.* (quoting *Brown*, 422 U.S. at 604). Although the minority reading of *Lopez-Mendoza* is not without some force, most of the circuits that have addressed the problem remain convinced that a person's identity is simply not subject to suppression.[14]

We need not resolve these divergent views today because, even if we were to adopt the minority position, suppression would not be appropriate here. Our colleagues in the Eleventh Circuit recently confronted the exact issue that we face. *See United States v. Farias-Gonzalez*, 556 F.3d 1181 (11th Cir. 2009). In *Farias-Gonzales*, the Eleventh Circuit weighed the heavy social costs of suppressing identity evidence and concluded that evidence "offered solely to prove the identity of [a] defendant" was admissible. *Id.* at 1187. It explained:

---

[14] In addition to our opinion in *United States v. Garcia-Garcia*, 633 F.3d 608, 616 (7th Cir. 2011), five circuits have rejected the argument that Mr. Chagoya-Morales asks us to consider. *See, e.g.*, *United States v. Scroggins*, 599 F.3d 433, 449–50 (5th Cir. 2010) (concluding that immigration and deportation records are not suppressible); *United States v. Garcia-Beltran*, 443 F.3d 1126, 1132 (9th Cir. 2006); *United States v. Bowley*, 435 F.3d 426, 430–31 (3d Cir. 2006); *United States v. Navarro-Diaz*, 420 F.3d 581, 587–88 (6th Cir. 2005); *Navarro-Chalan v. Ashcroft*, 359 F.3d 19, 22 (1st Cir. 2004).

> In *Hiibel v. Sixth Judicial Dist. Court of Nev.*, the Supreme Court stated that, "In every criminal case, it is known and must be known who has been arrested and who is being tried." 542 U.S. 177, 191, 124 S. Ct. 2451, 2461, 159 L. Ed. 2d 292 (2004). Both the court and the Government are entitled to know who the defendant is, since permitting a defendant to hide who he is would undermine the administration of the criminal justice system. For example, a defendant who successfully suppressed all evidence of his identity could preclude consideration of his criminal history, which could give rise to relevant and admissible evidence at trial.

*Id.* Similarly, there is little need to deter police from "illegally" collecting identity evidence because this evidence can "be otherwise obtained without violating the Fourth Amendment." *Id.* at 1188. As the Eleventh Circuit emphasized,

> The Constitution does not prohibit the Government from requiring a person to identi[f]y himself to a police officer. *Hiibel*, 542 U.S. at 188, 124 S. Ct. at 2459 ("A state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures.").

*Id.*

The Eleventh Circuit grounded its analysis in the decision of the Supreme Court in *Hudson*, 547 U.S. 586. There, the Court held that the exclusionary rule was an inappropriate

remedy for violations of the knock-and-announce require-ment. The Court reasoned that the exclusionary rule should be invoked "only where its remedial objectives are thought most efficaciously served—that is, where its deterrence bene-fits outweigh its substantial social costs." *Id.* at 591 (internal citations omitted) (internal quotation marks omitted). The Court saw little deterrence benefit to the application of the ex-clusionary rule in knock-and-announce violations. In the Court's view, officers violate the requirement not to obtain evidence that is not otherwise obtainable, but to avoid unnec-essary violence and to ensure the preservation of evidence.

On the other hand, the use of the exclusionary rule, rea-soned the Court in *Hudson*, resulted in the exclusion of rele-vant and probative evidence and imposed a high social cost with very little return.

The Eleventh Circuit in *Farias-Gonzalez* then determined that the Supreme Court's reasoning in *Hudson* with respect to the knock-and-announce rule applied to the exclusion of iden-tity-related evidence as well. The court concluded that the so-cial costs are indeed high because the identity of the defend-ant is necessary to the proper functioning of the court system. Permitting the defendant to hide his true identity would un-dermine the administration of justice and would achieve the same result as allowing him to suppress the court's jurisdic-tion over him. Turning to the benefits of permitting the exclu-sionary rule, the court concluded that there was no identifica-tion evidence that could not be found through other inde-pendent means. "[E]ven if a defendant in a criminal prosecu-tion successfully suppresse[d] all evidence of his identity and

the charges are dropped, the Government can collect new, admissible evidence of identity and re-indict him." *Farias-Gonzalez*, 556 F.3d at 1188.

Indeed, this approach was foreshadowed by our court in *United States v. Roche-Martinez*, 467 F.3d 591 (7th Cir. 2006), when we remarked that, even if a Fourth Amendment violation had occurred, information about the defendant's identity in an illegal reentry prosecution should not be suppressed. *Id.* at 594 ("[The defendant's] illegal presence could have been proven absent the illegal entry. Once he was taken outside the house, detained, and fingerprinted, he was still present in the United States on July 1, 2004.").

These considerations are applicable here. The Government seeks only to use Mr. Chagoya-Morales's identity from the stop. Once that is known, Mr. Chagoya-Morales's immigration status can be confirmed outside of the traffic stop's context. This means that excluding the evidence now would "merely [] postpone a criminal prosecution." *Farias-Gonzalez*, 556 F.3d at 1189; *see also United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005) ("Directing the district court to grant [the defendant]'s suppression motion … would not affect the ultimate outcome of the charge against him. … Because [the defendant] could simply be reindicted for the same offense, suppressing his identity would have little deterrent effect … ."); *United States v. Ortiz-Hernandez*, 427 F.3d 567, 578–79 (9th Cir. 2005) ("Were [the defendant] to be released, law enforcement officials immediately would have probable cause to re-arrest him based on their knowledge of his identity and

his criminal and immigration records. … To conclude otherwise would lead to an absurd result.").[15] The identity evidence therefore is admissible.

**B.**

Mr. Chagoya-Morales makes two distinct arguments regarding the sixteen-level increase for "crimes of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii). First, Mr. Chagoya-Morales contends that such an increase violates the due process clause and is void for vagueness pursuant to *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"). In the alternative, Mr. Chagoya-Morales submits that aggravated robbery is not a "crime of violence" under § 2L1.2(b)(1)(A)(ii)'s force clause.[16] We review de novo a district court's determination

---

[15] Mr. Chagoya-Morales suggests that applying this rationale "would subject every Hispanic American [or other foreign looking American citizen] to being stopped and interrogated about their citizenship based solely on their appearance, and detained until confirmation is received that they are not illegally in this country." Appellant's Br. 18 (alteration in original). As the Supreme Court has suggested, however, the prospect of civil liability is sufficient to deter police from violating constitutional rights. *See Utah v. Strieff*, 136 S. Ct. 2056, 2064 (2016); *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1189 (11th Cir. 2009) (rejecting the argument that "immigrants will be subject to rampant violations of the Fourth Amendment if identity-related evidence is not suppressible" because, "[a]s in *Hudson*, civil suits provide deterrence for searches and seizures that violate the Fourth Amendment").

[16] The Guidelines define a "crime of violence" in two ways under § 2L1.2(b)(1)(A)(ii). That section first enumerates certain offenses as crimes of violence (*e.g.*, "murder," "manslaughter," "kidnapping," "robbery," etc.). Its second clause, commonly called the "force clause," incorporates other offenses which have "as an element the use, attempted use,

that a defendant's predicate conviction constitutes a crime of violence under the Sentencing Guidelines § 2L1.2(b)(1)(A)(ii). *United States v. Franco-Fernandez*, 511 F.3d 768, 769 (7th Cir. 2008).

The district court relied on the "force clause" of the guideline to impose the sixteen-level enhancement. When the briefs were filed in this case and, indeed, at the time of oral argument, it was the law of this Circuit that the holding of *Johnson II* applied to the Sentencing Guidelines. *See United States v. Hurlburt*, 835 F.3d 715, 724–25 (7th Cir. 2016) (en banc). The Supreme Court now has taken a different view and has held explicitly that "the Guidelines are not subject to a vagueness challenge under the Due Process Clause." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017). We therefore cannot accept Mr. Chagoya-Morales's first argument.

We now examine whether Mr. Chagoya-Morales's prior aggravated robbery conviction satisfies *Johnson I*. In *Johnson I*, the Supreme Court made clear that not all convictions involving some level of force qualified as "crimes of violence" under the Armed Career Criminal Act ("ACCA"). Instead, the Court emphasized that "the term 'physical force' itself normally connotes force strong enough to constitute 'power'—and all the more so when it is contained in a definition of 'violent felony.'" *Johnson I*, 559 U.S. at 142.

*Johnson I*'s threshold is "not a high one." *United States v. Duncan*, 833 F.3d 751, 754 (7th Cir. 2016). *Johnson I* did not hold that "physical force" requires "a level of force *likely* to cause serious injury, or traumatic injury." *Id.* at 756 (emphasis

―――――――――――――――

or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2(b)(1)(A)(ii), cmt. n.1(B)(iii).

added). Rather, *Johnson I* requires only "force *capable* of causing physical pain or injury to another person." 559 U.S. at 140 (emphasis added). "[A] slap in the face will suffice," as will "[a] fear of a slap in the face." *Duncan*, 833 F.3d at 754, 756. Although *Johnson I* interpreted the ACCA, we treat its guidance as applying equally to the Guidelines. *United States v. Taylor*, 630 F.3d 629, 633 n.2 (7th Cir. 2010).

The commentary to section 2L1.2(b)(1)(A)(ii) defines a "crime of violence" as

> any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses[,] … statutory rape, sexual abuse of a minor, *robbery*, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as *an element the use, attempted use, or threatened use of physical force against the person of another*.

U.S.S.G. § 2L1.2(b)(1), cmt. n.1(B)(iii) (emphasis added). Mr. Chagoya-Morales admits that he "was convicted" under a 2007 version of the Illinois aggravated robbery statute, which defined the offense as:

> [(a)] A person commits aggravated robbery when he or she takes property from the person or presence of another *by the use of force* or *by threatening the imminent use of force while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon, including a knife, club, ax, or*

> *bludgeon*, in his or her possession when he or she
> committed the robbery.[17]

The plain language of this statute appears to satisfy § 2L1.2(b)(1)(A)(ii)'s force clause. To be convicted, a defendant must either "use" force or "threaten" its imminent use.

Prior to *Johnson I*, we reviewed similar language in the Illinois *robbery* statute and concluded that the state's threshold for "force" was sufficient to constitute a "crime of violence." *See United States v. Bedell*, 981 F.2d 915, 916 (7th Cir. 1992). In *Bedell*, we relied on state court rulings which had observed that certain takings from the person of another did not fall within the ambit of the statute. The Illinois courts had eliminated, for example, takings "'without any sensible or material violence to the person, as snatching a hat from the head or a cane or umbrella from the hand.'" *Id.* (quoting *People v. Patton*, 389 N.E.2d 1174, 1177 (Ill. 1979)); *see also Hall v. People*, 49 N.E. 495, 496 (Ill. 1898). In such instances, "'the offense will be held to be theft from the person rather than robbery.'" *Bedell*, 981 F.2d at 916.

The only difference between Mr. Chagoya-Morales's Illinois *aggravated robbery* conviction and a *robbery* conviction is that *aggravated robbery* first requires "a robbery, *i.e.*, a taking of property from the person or presence of another by the use of force or by threatening the imminent use of force." *People v. Gray*, 806 N.E.2d 753, 757 (Ill. App. Ct. 2004) (internal quotation marks omitted). The crime is then *aggravated* because the "defendant 'indicat[ed] verbally or by his or her actions to the victim that he or she [wa]s presently armed with a firearm.'" *Id.* at 758 (quoting *People v. McDonald*, 748 N.E.2d 255

---

[17] Appellant's Br. 22 n.6 (emphasis added) (quoting 720 ILCS 5/18-5(a)).

(Ill. App. Ct. 2001)). This aggravating factor serves as an additional reason to conclude that Mr. Chagoya-Morales's predicate offense required more force than the threshold described in *Johnson I*. To be convicted, Mr. Chagoya-Morales must have been found guilty of forcefully taking property from a person, *i.e.*, robbery, while also suggesting that a refusal to comply with his demand would be met with even greater force than the ordinary robbery conviction, *i.e.*, the presence of a firearm.[18] We therefore conclude that the district court properly applied the sixteen-level "crime of violence" enhancement.[19]

## C.

We now turn to Mr. Chagoya-Morales's contention that the imposition of his sentence was procedurally infirm and substantively unreasonable. We review contentions concerning procedural error de novo. *United States v. Estrada-Mederos*, 784 F.3d 1086, 1090 (7th Cir. 2015). "Examples of procedural

---

[18] *See United States v. Armour*, 840 F.3d 904, 909 (7th Cir. 2016) (concluding that robbery by assault by a dangerous weapon or device under 18 U.S.C. § 2113(d) satisfies *Johnson I*).

[19] Below, Mr. Chagoya-Morales also appeared to assert that he was innocent of this aggravated robbery offense. At sentencing, his lawyer explained:

> there's no mention of my client having a weapon at the time that that crime was committed which, in reading the state statute for that offense, would be an element of—either that or threatened use of it, it wasn't in the report that I reviewed from discovery.

R.47 at 5. As the district court noted, however, this is not the appropriate proceeding for Mr. Chagoya-Morales to challenge his earlier conviction.

error that may warrant reversal include: 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [section] 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *United States v. Fogle*, 825 F.3d 354, 357 (7th Cir. 2016) (alteration in original) (quoting *United States v. Scott*, 555 F.3d 605, 608 (7th Cir. 2009)). "The district court must say enough to 'satisfy the appellate court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority.'" *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012) (quoting *Rita v. United States*, 551 U.S. 338, 359 (2007)). In reviewing the reasonableness of the sentence, our review is for abuse of discretion. *Id.* (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Mr. Chagoya-Morales makes two specific arguments that his sentence is procedurally infirm: (1) that the Guidelines range was calculated incorrectly, and (2) that there is no mention of whether the court included in its analysis that Mr. Chagoya-Morales has exhibited no criminal behavior in the past seven years.

As our previous discussion establishes, the district court correctly applied the sixteen-level enhancement. We therefore cannot accept Mr. Chagoya-Morales's first argument.[20] With respect to the second argument, our review of the record fails to convince us that the district court did not consider the

---

[20] Other than the sixteen-level enhancement, Mr. Chagoya-Morales does not challenge the district court's calculation of his Guidelines range.

§ 3553(a) factors, including the defendant's rehabilitation. At sentencing, the district court specifically stated:

> Defendant is not an average defendant as the government has argued and therefore the average sentences even if those calculations were correct for illegal reentry cases, a defendant who is not average should not receive an average sentence.
>
> …
>
> In considering the defendant's history and characteristics, I've considered the defendant's criminal history that includes convictions for driving without a valid license, driver license, aggravated unlawful use of a weapon which involved police observing the defendant shoot a handgun … .
>
> I've also considered the defendant's indication that he's remorseful for his crime, that he has changed his ways and wants to be a positive role model to his children, that he came back to support his United States citizen children.[21]

The court therefore explained why it thought that a below-guidelines sentence was an appropriate balance of aggravating and mitigating factors in light of the purposes of sentencing—promoting respect for the law, deterrence, and the protection of society.[22] Rejecting an argument is not grounds for

---

[21] R.47 at 37–38.

[22] *Id.* at 41.

procedural error. *See United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015). Additionally, the district court explicitly considered Mr. Chagoya-Morales's argument to credit him for time served.[23]

We next consider whether the sentence was substantively reasonable. "A below-guidelines sentence, like a within-guidelines one, is presumed reasonable against a defendant's challenge that it is too high." *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009).[24] That we might have imposed a different sentence is not sufficient to justify reversal, *United States v. Scott*, 555 F.3d 605, 610 (7th Cir. 2009); reasonableness "contemplates a range, not a point," *id.* at 608.

The district court explained its downward departure from the Guidelines range. In imposing a sentence that was nine months below the low end of the range, the district court noted that Mr. Chagoya-Morales "is not an average defendant as the government has argued and therefore the average sentences even if those calculations were correct for illegal reentry cases, a defendant who is not average should not receive an average sentence."[25] The district court continued:

---

[23] *Id.* at 43–44. ("I credited him based on the Probation Department's—actually, it was two portions. He was in ICE custody for I think two or three months and then the Probation Department added a few more months under 2L but I went a couple months above that, a few months above that.").

[24] *See also United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008) ("We have never deemed a below-range sentence to be unreasonably high."); *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of below-range sentences that would be unreasonably high.").

[25] R.47 at 37.

In considering the need to deter the defend-
ant and others from engaging in such crime,
there's a definite need to deter the defendant
and others from violating immigration laws.
The security of this country's borders is im-
portant to this country's welfare. I've consid-
ered the defendant's claims that he's a rehabili-
tated person and is no longer an active member
in a gang.

In considering the need in this case to protect
the public from the crimes of the defendant, his
crime did not involve violence. However, he
had a history of violence in the United States
prior to that so there is a — whether major need,
no, but some need to protect the public.

…

… I've considered all of the arguments pre-
sented to me by government's counsel, defense
counsel and the defendant. I've considered the
Federal Sentencing Guidelines as advisory. I've
taken into consideration all factors provided in
18 U.S.C. 3553(a). I've considered the totality of
the circumstances in fashioning a sentence for
the defendant. I've considered the letters from
the defendant's family and friends indicating
that he's a good and caring person and takes
care of his family and the letter from the defend-
ant indicating that he's sorry for his crime and
for the trouble he has caused to his family and

that he has tried to change his ways and his
plans after deportation.[26]

The district court then justified its decision to impose a below-guidelines sentence. In its written statement of reasons, the district court noted Mr. Chagoya-Morales's age and "[f]amily [t]ies and [r]esponsibilities."[27] Still, to "reflect the seriousness of the offense," to "afford adequate deterrence," and to "protect the public," the district court concluded that a forty-eight month sentence was appropriate.[28]

Our review of the district court's sentencing proceedings convinces us that the imposed sentence is substantively reasonable. This below-guidelines sentence is adequately supported by factors explained in the sentencing transcript and in the court's statement of reasons.

## Conclusion

Because the district court did not err in admitting Mr. Chagoya-Morales's identity, because the district court properly concluded that Illinois aggravated robbery is a "crime of violence," and because the district court imposed a procedurally and substantively reasonable sentence, its judgment is affirmed.

AFFIRMED

---

[26] *Id.* at 40–42.

[27] R.39 at 3.

[28] *Id.*