18-2991-cv
Adia v. Grandeur Management, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2018

Submitted:  May 6, 2019          Decided: July 25, 2019

Docket No. 18-2991-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NOEL P. ADIA,

    Plaintiff-Appellant,

        v.

GRANDEUR MANAGEMENT, INC., RAJA I. YOUNAS,

    Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, JACOBS, and DRONEY, <u>Circuit Judges</u>.

    Appeal from a judgment of the United States District Court for the Southern

District of New York (Robert W. Sweet, District Judge) dismissing the plaintiff-

appellant Noel P. Adia's complaint against the defendants-appellees Grandeur

Management, Inc. and Raja I. Younas, alleging claims for forced labor and human

trafficking in violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1590, 1595, and the Alien Tort Statute, 28 U.S.C. § 1350, and a claim for unpaid overtime under Article 19 of the New York Labor Law. The appeal is taken only from the dismissal of Adia's TVPA claims for forced labor and human trafficking.

Because the plaintiff has plausibly stated claims for forced labor and human trafficking under the TVPA, we vacate the District Court's judgment in part and remand for further proceedings.

> Felix Q. Vinluan, Law Office of Felix Vinluan, Woodside, NY for Plaintiff-Appellant Noel P. Adia.
>
> Nolan Klein, Law Offices of Nolan Klein, P.A., New York, NY for Defendants-Appellees Grandeur Management, Inc. and Raja I. Younas.

JON O. NEWMAN, Circuit Judge:

The issue on this appeal is whether the provision of the Trafficking Victims Protection Act ("TVPA") creating a civil remedy, 18 U.S.C. § 1595, for violating the criminal provisions prohibiting forced labor and human trafficking, *id*. §§ 1589, 1590, applies to an immigrant lawfully in this county on a temporary guest worker

visa alleging that his employers threatened to revoke their sponsorship, thereby subjecting him to deportation.[1] This issue arises on an appeal by Noel P. Adia from a judgment of the District Court for the Southern District of New York (Robert W. Sweet, District Judge) dismissing, under Fed. R. Civ. P. 12(b)(6), his amended complaint against defendants-appellees Grandeur Management, Inc. ("Grandeur") and Raja I. Younas (collectively "the defendants").

We conclude that Adia plausibly pled violations of the TVPA. The complaint alleges that the employers recruited Adia to work for them, told him to rely on them, represented that they were ensuring that he could remain lawfully in this country, and warned him that they would cancel their sponsorship if he left them or gave them any trouble. We reverse dismissal of the TVPA allegations and remand for further proceedings.

## Background

*Alleged facts.* The original and amended complaints allege the following facts, assumed to be true for purposes of this appeal. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). Plaintiff-appellant Adia is a Filipino citizen who lawfully entered the United States as a temporary guest worker with an H-2B visa.

---

[1] Although a deportable alien is "removed," 8 U.S.C. § 1227(a), we will use "deportation," the term used by the District Court and the parties.

Defendant-appellee Grandeur is a provider of hotel and resort services; Defendant-appellee Younas is the manager of Grandeur. In early September 2010, Younas offered Adia H-2B transfer sponsorship as a housekeeping attendant in South Carolina. Adia had been engaged in similar employment in South Dakota when he accepted Younas's offer. When Adia arrived in South Carolina, the defendants informed him that there was no work at that time. The defendants assured him that a job would arise, and presented apparent proof in the form of a United States Citizenship and Immigration Services ("USCIS") notice that they had filed for an extension of his H-2B status under their sponsorship.

In March 2011, Younas instructed Adia to coordinate with a cleaning services company in New York, which led to his employment as a housekeeping attendant, and later as a doorman, at Manhattan hotels. The defendants paid Adia through affiliated entities, and monitored his employment. Although Adia regularly worked more than 40 hours a week, the defendants did not pay him extra for overtime.

In October 2011, Adia was told by Younas that he had applied to change Adia's H-2B status to B1/B2, and sent Adia the USCIS notice acknowledging receipt of the application. Younas promised that he would ensure that Adia could

lawfully remain in the country, and asked Adia in return to promise not to look for other employment.

Younas told Adia that his immigration status depended on his "continuing reliance" on the defendants, and that the "[d]efendants would cancel or withdraw his immigration sponsorship if he left them" or would be "difficult to them regarding his work." Adia feared that the defendants would cancel his immigration sponsorship or terminate his employment if he complained about not receiving overtime pay.

In February 2012, Adia asked Younas about the filing of his H-1B sponsorship. Younas told him that he had not filed any H-1B petition for Adia and that Adia had been unlawfully working and staying in the country for some time because he did not have a valid immigration status.

*Procedural history.* Adia filed a complaint alleging causes of action for forced labor and human trafficking under the TVPA and the Alien Tort Statute ("ATS"), as well as unpaid overtime under the New York Labor Law. The defendants filed a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6).

The District Court denied the Rule 12(b)(2) motion, but granted the Rule 12(b)(6) motion. *See Adia v. Grandeur Management, Inc.*, No. 17 Civ. 9349 (RWS),

2018 WL 4300528 (S.D.N.Y. Sept. 10, 2018). The Court dismissed the TVPA claims against Grandeur, ruling that the Act does not impose liability on corporate defendants. As to the TVPA claims against Younas, the Court ruled that the forced labor claim failed because it was based on Adia's "subjective feeling," *id*. at *3, rather than on threats; the human trafficking claim was ruled insufficient because Adia was already in the country when he was recruited and the allegations merely restated the forced labor claim. The District Court dismissed the ATS claims because Adia failed to allege any facts that could reasonably be construed as a violation of the law of nations. Finally, the Court declined to exercise supplemental jurisdiction over the state law overtime pay claim.

## Discussion

*Pleading standard.* To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on

its judicial experience and common sense."[2] *Id.* at 679 (internal citation omitted).

To keep the plausibility standard in perspective, we do well to keep in mind that just two weeks after deciding *Twombly*, the Supreme Court, reversing a Rule 12(b)(6) dismissal of a complaint, stated, "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted).

*Adia's TVPA forced labor claim.* A person violates 18 U.S.C. § 1589 when he or she:

> knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
> . . .
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . . .

---

[2] The context of *Twombly* was an alleged antitrust conspiracy among the so-called "Baby Bells," after their divestiture by the American Telephone & Telegraph Company. The context of *Iqbal* was an allegation of unconstitutional action by the United States Attorney General and the FBI Director.

18 U.S.C. § 1589(a). The victim of a section 1589(a) criminal violation has a civil remedy.

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator . . . in an appropriate district court of the United States and may recover damages and reasonable attorney[']s fees.

18 U.S.C. § 1595(a).

Adia contends that by threatening to alter his immigration status, the defendants abused or threatened abuse of law or legal process in violation of subsection 1589(a)(3), and caused Adia to believe that he would suffer the serious harm of deportation by means of a scheme or plan in violation of subsection 1589(a)(4). "[A]buse or threatened abuse of law or legal process" means "the use or threatened use of a law or legal process . . . in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *Id.* at § 1589(c)(1). "[S]erious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious . . . to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* at § 1589(c)(2).

The Supreme Court, considering a similar statute prohibiting involuntary servitude, 18 U.S.C. § 1584, has stated that "threatening . . . an immigrant with deportation could constitute the threat of legal coercion." *United States v. Kozminski*, 487 U.S. 931, 948 (1988). The Tenth Circuit has stated that threats of deportation can constitute "serious harm" under subsection 1589(c)(2). *United States v. Kalu*, 791 F.3d 1194, 1212 (10th Cir. 2015).

The amended complaint explicitly alleges that Younas told Adia that the "[d]efendants would cancel or withdraw his immigration sponsorship if he left them or would be difficult to them regarding his work." In the context of Adia's circumstances, the defendants' alleged threat to cancel their sponsorship constitutes abuse of legal process for purposes of subsection 1589(a)(3). *See, e.g., United States v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008).

When Younas said that the defendants would withdraw their sponsorship of Adia's visa if he stopped working for them or gave them any trouble, the statement, viewed in light of the surrounding circumstances, plausibly supports an inference that Adia was entitled to regard it as a threat to expose him to deportation. *See, e.g., Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 460–61 (E.D.N.Y. 2013), and plausibly constituted a claim of abuse of the legal process.

*See, e.g.*, *Calimlim*, 538 F.3d at 713. Adia has plausibly pled a claim for forced labor under subsection 1589(a)(3).

For the same reasons, Adia has plausibly stated a claim for relief under subsection 1589(a)(4). The defendants' threat that they would withdraw sponsorship could plausibly be understood as a scheme to convince him that he would be harmed by deportation if he left or asked for overtime pay. The defendants threatened the plaintiff with serious harm—removal from the country due to a loss of legal status. They did so while engaging in a scheme whose purpose was to make Adia rely on them in remaining in this country legally, to force him to accept less than the prevailing wage rate based on the threat of facing deportation, and similarly to forestall any effort to seek other employment. Adia's subsection 1589(a)(4) claim also withstands a motion to dismiss. *See, e.g.*, *United States v. Dann*, 652 F.3d 1160, 1172 (9th Cir. 2011).

Adia has stated viable forced labor claims under subsections 1589(a)(3) and (a)(4).

*Adia's TVPA trafficking claim*. A person violates 18 U.S.C. § 1590 when he or she "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of" the statutes prohibiting, *inter alia*,

forced labor, is guilty of trafficking. 18 U.S.C. § 1590(a). Section 1595 provides a civil remedy for victims of violations of this statute as well.

Adia alleges that when he was working in South Dakota, Younas recruited him to come work for Grandeur by saying that he would sponsor his H-2B transfer application. This allegation is distinct from the forced labor allegations. The defendants recruited Adia by promising to transfer and sponsor his H-2B visa, then forced him to work for less than he was owed by threatening to revoke that sponsorship. Section 1590 employs the disjunctive "or" in delineating the ways in which a defendant can violate the statute. Therefore, if a defendant violates section 1589, he also violates section 1590 if he recruited the person to perform forced labor. As Adia has plausibly alleged claims for forced labor, he has also plausibly alleged a claim for trafficking based on the allegation related to his recruitment.

It does not matter, as the District Court thought, that Adia was already present in the United States when the defendants recruited him. There is no requirement in either sections 1589 or 1590 that victims be brought into, or recruited from outside, the United States. Indeed, the statutes do not even require that the victims be foreign-born. *See, e.g.*, *United States v. Callahan*, 801 F.3d 606, 618 (6th Cir. 2015).

Adia has plausibly alleged a claim for trafficking under section 1590.

*Corporate liability.* Finally, we note that, as the defendants concede, the District Court erroneously ruled that Grandeur, as a corporate defendant, could not be liable under the TVPA.[3]

Conclusion

The judgment of the District Court is vacated in part. Because the plaintiff has abandoned his ATS claims on appeal, they need not be considered, *see Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010). We vacate the portion of the judgment appealed from, dismissing the plaintiff's TVPA claims, and the case is remanded for further proceedings, including the exercise of supplemental jurisdiction.

---

[3] In rejecting corporate liability, the District Court mistakenly relied on caselaw considering a different statute, the Torture Victim Protection Act, that happens to have the same abbreviation as the TVPA. *Adia*, 2018 WL 4300528, at *3 (citing *Mohamad v. Palestinian Authority*, 566 U.S. 449, 451 (2012)).