In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2758

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MAURICIO MARCHAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 CR 00005-2 — **Gary Feinerman**, *Judge.*

ARGUED MAY 16, 2019 — DECIDED AUGUST 13, 2019

Before BAUER, HAMILTON, and ST. EVE, *Circuit Judges*.

BAUER, *Circuit Judge.* Following a jury trial, Mauricio
Marchan was convicted of one count of possession with intent
to distribute 500 grams or more of cocaine, in violation of 21
U.S.C. §§ 841(a)(1) and 846, and one count of distribution of 500
grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1).

Marchan appeals his conviction arguing that the trial proceedings were replete with errors and, as a result, he was denied a fundamentally fair trial. After considering the events at trial, we believe that the district court judge diligently presided over the trial, but to the extent any errors were made, they were harmless. Accordingly, we affirm.

## I. BACKGROUND

In the early evening of January 4, 2017, Pedro Chavelas, a government informant, met with Victor Ramirez, who had agreed to facilitate Chavelas's purchase of two kilograms of cocaine. The two met in a Target parking lot in Chicago's Archer Heights neighborhood. After a brief recorded discussion, Ramirez and Chavelas met with Marchan who informed them the cocaine was with "[t]he guy in the little white car." After Chavelas confirmed that the cocaine was present, agents moved in.

Marchan, Ramirez, and the "guy in the little white car" ("Moreno"), were arrested. Agents searched the white car and recovered a kilogram of cocaine. Agents also seized cell phones from Marchan, Ramirez, and Moreno. An examination of telephone records showed multiple calls between Ramirez and Marchan and Marchan and Moreno leading up to their arrest.

On September 14, 2017, a grand jury returned a superseding indictment charging Marchan with one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). On March 5, 2018, his jury trial began.

Before trial the government submitted a *Santiago* proffer purporting to show a conspiracy to distribute cocaine. In his objection Marchan pointed out that, under this circuit's precedent, a single narcotics transaction, where only a buyer-seller relationship exists, is not enough to establish a conspiracy. *See United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010). Thereafter the government withdrew its proffer after deciding not to call Ramirez, upon whose testimony the proffer was largely based.

At trial the government produced a multitude of witnesses: Special Agent Billy Conrad ("SA Conrad"), who testified about some of the surveillance conducted during the operation; Dr. Catalina Johnson (the "Translator"), who translated the Spanish language audio made by Chavelas's hidden recording device; Task Force Officer Francisco Gomez ("TFO Gomez"), who discussed the pending transaction with Chavelas and monitored the transaction as it occurred; and the Investigations Case Agent Owen Putman ("Agent Putman"), who testified about how Chavelas came to be a government informant and the cooperation agreement.

When Chavelas was called to testify he spoke about his cooperation agreement with the government, the government's promise to recommend a sentence reduction, his status as an illegal alien, and the government's protection against deportation. When Chavelas testified about the transaction, he described his participation in the arrest of Ramirez, Marchan, and Moreno. He also walked the court through the surveillance video and the recorded conversations. On cross-examination, Chavelas admitted that he had only heard the audio recording

three times and not until over a year after they were made. He also stated that he heard phrases that were not transcribed.

Next, the government called Special Agent Adam Stachecki ("SA Stachecki"), who was one of the arresting officers, to identify Marchan. SA Stachecki also testified that he personally recovered the cocaine from the white car. Next, Group Supervisor Colin Dickey ("Supervisor Dickey"), testified that he observed the surveillance operation and on cross-examination discussed the importance of searching an informant before any coordinated transaction. Finally, Intelligence Analyst Gabriella Perez ("Analyst Perez"), introduced various charts and records pertaining to Marchan and Ramirez's telephone calls. The defense introduced a stipulation that no fingerprint analysis was performed.

Following the close of evidence but before deliberations, the parties agreed that the Spanish language recording would not be given to the jury; only the translated transcript would be provided. However, the jury later requested the audio recording, which the court sent back over Marchan's objection.

Ultimately, the jury returned a guilty verdict on both counts of the indictment. On July 26, 2018, Marchan was sentenced to 60 months in the custody of the Bureau of Prisons.

## II.  ANALYSIS

Marchan argues that his trial was tainted with numerous errors that deprived him of a fair trial. He first asserts that the trial court abused its discretion when it denied his motion for a mistrial following the government's solicitation of inadmissible co-conspirator statements. He argues the court erred when

it limited his cross-examination of Chavelas regarding his bias. He next argues the court erred when it permitted the jury to consider the Spanish language audio recording of the transaction in addition to the transcript. And finally, he argues that a new trial is required because of the cumulative effect of the above errors. For the reasons below, we disagree and affirm the decision of the district court.

## A. Marchan's Motion for Mistrial

Marchan argues that testimony elicited by the government during the direct examinations of TFO Gomez, Agent Putman, and Chavelas, was an attempt to show that Chavelas and Ramirez arranged the transaction—all of which was inadmissible hearsay. He argues that because the government improperly introduced hearsay statements from Ramirez, the court should have granted a mistrial.

"A mistrial is appropriate when an event during trial has a real likelihood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has not been deprived of a fair trial." *United States v. Hilliard*, 851 F.3d 768, 778 (7th Cir. 2017) (internal quotations and citation omitted). Improperly admitted statements may be grounds for a mistrial. *See United States v. Cardena*, 842 F.3d 959, 993 (7th Cir. 2016) (discussing co-conspirator statements in the context of *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978)). The district court's denial of Marchan's motion for a mistrial is reviewed for abuse of discretion. *Hilliard*, 851 F.3d at 778 (citations omitted).

Marchan suggests that over multiple days and from multiple witnesses, the government elicited hearsay testimony

which showed Chavelas coordinated with Ramirez to purchase cocaine from him. Absent this evidence, he argues, there was no other evidence to establish his participation in the transaction. However, the contested statements were not admitted to prove the truth of the matter asserted and when inadmissible testimony was given, the court instructed the jury to ignore the statements.

TFO Gomez testified about his meeting with Chavelas and stated he believed he was meeting with him to discuss a forthcoming narcotics transition. He then spoke about the actions he took on December 28 and 30, 2016, leading up to the narcotics transaction. He did not testify about what was said at these meetings. TFO Gomez's testimony was not given to prove the truth of the matter asserted, Fed. R. Evid. 801(c) (defining hearsay), instead, the statements were made to show the course of the investigation. *United States v. Cruse*, 805 F.3d 795, 810 (7th Cir. 2015) ("statements offered to establish the course of the investigation, rather than to prove the truth of the matter asserted, are nonhearsay and therefore admissible.") (*quoting United States v. Taylor*, 569 F.3d 742, 749 (7th Cir.2009)). While we are reluctant to permit "course of the investigation" rationale for fear of its abuse or misuse, *Carter v. Douma*, 796 F.3d 726, 736 (7th Cir. 2015); *see United States v. Haldar*, 751 F.3d 450, 454 fn.1 (7th Cir. 2014), here the district court carefully limited any controversial testimony.

Agent Putman's testimony was similar to TFO Gomez. He testified about his coordination with Chavelas and the course of the investigation leading up to and including the transaction on the evening of January 4, 2017. Like with TFO Gomez, the defense did not object to the majority of these questions. When

the defense did object, the court sustained the objection and instructed the jury to disregard the question and answer. Because the contested statements are course of investigation statements not hearsay, the court was correct to permit the testimony. *Cruse*, 805 F.3d at 810.

The defense also takes issue with much of Chavelas's testimony. He argues that the identifications of Marchan were inappropriate, but no objection was made at trial and the identifications are not inadmissible under the hearsay rule. The defense next argues that the exchange where Chavelas discussed the purpose of the meeting with Ramirez was inappropriate. Typically, a co-conspirator's statements are excluded from the definition of hearsay, Fed. R. Evid. 801(d)(2)(E), but here the government withdrew the *Santiago* proffer so the district court never decided if there was a conspiracy as a matter of law. However, even if Chavelas's statements were hearsay, any error is harmless because TFO Gomez and Agent Putman already testified to the issues challenged, corroborating his testimony. Because Chavelas's testimony was cumulative and corroborated, we find any error was harmless. *See United States v. Castelan*, 219 F.3d 690, 696 (7th Cir. 2000) (articulating the test for harmless error). Moreover, the few objections that were made at trial were largely sustained and the court instructed the jury to disregard the questions and answers. "Absent a showing to the contrary, this Court presumes that the jury limited its consideration of testimony in accordance with the trial court's instruction." *United States v. Bermea-Boone*, 563 F.3d 621, 625 (7th Cir. 2009).

### B.  The Scope of Chavelas's Cross-Examination

Before Chavelas testified, Marchan moved *in limine* to explore his cooperation agreement with the government and any mandatory minimum sentence he may or may not have avoided. The government opposed the motion arguing that: any cross-examination exploring Chavelas's mandatory minimum would likely confuse the jury and obfuscate the issue at bar; and a mandatory minimum would be the result of the government's charging decisions not Chavelas's cooperation at present. The court prohibited any cross-examination of Chavelas regarding any mandatory minimum he might face. Now, Marchan argues that the court's curtail of his cross-examination violated the Sixth Amendment's confrontation clause because he was unable to explore the witness's bias against him.

The Sixth Amendment guarantees criminal defendants the right to confront witnesses against them. U.S. Const. amend VI. When the district court's limitations on cross-examination directly implicates the core values of the Confrontation Clause our review is *de novo*, otherwise we review for abuse of discretion. *United States v. Trent*, 863 F.3d 699, 704 (7th Cir. 2017) (citations omitted).

Here, the district court permitted Marchan to cross-examine Chavelas about his underlying bias. Chavelas testified that he believed his cooperation would result in a recommendation for a reduced sentence and that his Guidelines sentence was between 46 to 57 months. On cross-examination, Chavelas testified that he faced a maximum penalty of 20 years incarceration and was hoping the government would recommend a

downward departure of 23 months. Because Marchan was able to address Chavelas's bias against him, the appropriate standard of review is for abuse of discretion.

The gravamen of Marchan's argument is that the government chose to levy a lesser charge against Chavelas. He suggests that, had the government wanted to, the U.S. Attorney's office would have been able to "find" an additional .2 grams of heroine to subject Chavelas to a harsher charge with a mandatory minimum sentence of ten years. This is the kind of reasonable limitation that the district court is expected to put on cross-examination. At best, this argument would have confused the jury and, at worst, it suggests impropriety by the government without supporting evidence. *United States v. Cavender*, 228 F.3d 792, 798 (7th Cir. 2000) ("The district court retains wide latitude to impose reasonable limits on the scope and extent of cross-examination based on concerns about things like harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant.").

Chavelas's testimony at trial was sufficient to expose his bias against Marchan and illustrate the benefits he might receive in connection with his testimony. Confrontation Clause concerns are ameliorated by exposing a witness's motivation to lie and biases towards the defendant. It is of secondary concern "how much opportunity defense counsel gets to hammer that point home to the jury." *United States v. Williams*, 892 F.3d 242, 248 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 467 (2018). The district court did not abuse its discretion by limiting Marchan's cross-examination of Chavelas.

Additionally, Marchan argues he should be permitted to cross-examine Chavelas concerning his subjective under-standing of the charges he was facing before his agreement to cooperate with the government. He argues that the restriction of his ability to inquire about the length of sentence Chavelas hoped to avoid is reversible error. We disagree.

While anything that motivates a witness to testify is properly within the confrontation clause, *Trent*, 863 F.3d at 705, here the exclusion of this line of questioning is not fatal to the government's case. As noted above, Chavelas's testimony and cross-examination was extensive. He was questioned about his motivation for cooperating with the government and testifying at trial. He also testified about his maximum sentence, a potentially reduced sentence, and his hopes that the govern-ment would recommend a sentence of 23 months.

As noted above, Chavelas's testimony was sufficient to expose his bias and interest. Accordingly, we need not address whether the district court abused its discretion when it prohibited cross-examination concerning an avoided manda-tory minimum sentence.

## C. The Jury's Consideration of the Audio Recording During Deliberations

Following trial, but before deliberations commenced, the parties agreed the jury would not be given the audio recording. Instead, they would only be furnished with a transcript prepared by the Translator. After deliberations began, the jury sent out a note requesting the audio recording of the trans-action. The government agreed and, over objection, the court permitted the recording to be considered by the jury, noting

that it was properly admitted into evidence even though it was not published at trial. Marchan argues that the district court erred when it permitted the jury to consider the Spanish language audio of the transaction.

The district court has broad discretion when considering what evidence to permit in the deliberation room when exhibits are properly admitted at trial. *United States v. Biggs*, 491 F.3d 616, 623 (7th Cir. 2007). "We review the district court's handling of the exhibits for a clear abuse of discretion." *Id*.

Marchan's principal argument in the presence of Spanish speaking jurors means their Spanish language skills will necessarily come into play when they listen to the audio. Accordingly, they will wield undue influence in the jury room. But, when the jurors were provided with the audio recording, they were recalled into the courtroom and instructed that they were to determine the accuracy of the translation given the Translator's qualification and the circumstances surrounding its production. They were admonished not to rely on their own Spanish language skills.

There is a rebuttable presumption that juries follow the instructions given by the court. *United States v. Flournoy*, 842 F.3d 524, 528 (7th Cir. 2016). Here, Marchan has done nothing to persuade us that the jury ignored the court's instructions. Our analysis in *United States v. Magana*, is informative. 118 F.3d 1173 (7th Cir. 1997). In *Magana*, the district court prohibited the government from giving transcripts and audio recordings to the jury that were not previously published at trial, despite being properly admitted into evidence. But, through a mis-understanding, many transcripts were provided which were

not accompanied by a tape that had been published at trial. Ultimately, the transcripts provided were removed from deliberations and the jury was instructed to disregard any transcript which did not have a corresponding audio recording. *Magana*, 118 F.3d at 1180–1184.

Here, the recording was properly admitted into evidence, provided additional information not present in the transcript (*e.g.*, tone and clarity), and the district judge gave proper limiting instruction. Therefore, we find that it was not an error to give the recording to the jury during deliberations. Moreover, considering our precedent in *Magana*, even if there might have been an error, it would have been harmless beyond a reasonable doubt.

### D.  The Cumulative Error at Trial was Harmless

"Cumulative errors, while individually harmless, when taken together can prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law." *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). To establish cumulative error a defendant must show that "(1) at least two errors were committed in the course of the trial; (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *Id*. at 847 (quoting *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000)).

Here, Marchan points to perceived errors but, as noted above, few errors occurred at trial. Any inadmissible hearsay testimony elicited by the government during their case-in-chief was stricken by the court and any error that resulted from providing the jury with the audio recording during delibera-

tions was *de minimis*. When considered together, these errors fail to show the defendant was deprived of a fair trial.

### III. CONCLUSION

Because no one error, nor the sum of all the perceived errors, was so egregious as to deprive Marchan a fair trial, we affirm the conviction.