In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-2345

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RITA LAW,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:14-cr-00004 — **Joseph S. Van Bokkelen**, *Judge.*

_____

SUBMITTED OCTOBER 28, 2020 — DECIDED MARCH 11, 2021

_____

Before RIPPLE, WOOD, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* A jury convicted Rita Law of sex
trafficking which the district court described as "a modern-
day form of slavery." On appeal, Law challenges several evi-
dentiary rulings at trial, the sufficiency of the evidence for her
convictions, and her sentence of 360 months' imprisonment.
We find no errors by the district court, so we affirm.

## I. Background

Rita Law owned and operated three massage spas which also offered sex services to customers in northwest Indiana.[1] HV and XC were two of Law's "employees" providing these services to clients.[2] HV was born in Vietnam, where she met Law in 2004. Soon after their meeting, Law introduced HV to Gary Toma and encouraged them to marry. HV did not know at the time that Toma was not only Law's friend but also a customer at Law's Duneland spa. Without this knowledge, HV agreed to marry Toma. Their engagement allowed her to obtain a fiancée visa to come to the United States.

By the time HV arrived in Chicago, she was pregnant with Toma's child, spoke limited English, and knew no one else. Law met and drove HV to one of her spas in Indiana. Once at the spa, she forced HV to provide sex services to customers. Law did so in part by claiming Toma owed her a debt and that HV would have to work at the spa to repay it.

Like HV, XC was living abroad when she first heard about Law. A friend told XC that she could make $25 to $30 an hour working for Law in the United States. So XC traveled from China to Chicago with few personal contacts, almost no money, and knowing little English. When XC first arrived at one of Law's spas, she thought she would be providing

---

[1] We present the facts from the record in the light most favorable to the government. *United States v. Wilson*, 879 F.3d 795, 798 n. 1 (7th Cir. 2018).

[2] We continue the district court's practice of identifying the victims by their initials.

nonsexual massages. But Law soon bullied XC into providing sex services and demanded money for room and board.

Law intimidated HV and XC into working at the spas under brutal conditions. At trial, HV testified she serviced six to nine men over a fifteen-hour workday. Law prevented the women from leaving the spa unaccompanied, declined to pay them hourly wages, and provided only one meal each day. To maintain control over HV and XC, Law confiscated their passports and monitored their activities by observing them using security cameras installed throughout the spas. Law also exerted psychological control over the women by falsely claiming they would be arrested if they were discovered and by physically intimidating them. For example, one time after XC and Law argued, Law did nothing in response to XC enduring violent treatment by a spa customer during a sex act. Another example of Law's cruelty is when HV called Law and told her she was experiencing severe bleeding and feared a miscarriage, Law did nothing and told her to return to bed. The next day when a doctor confirmed the miscarriage and suggested HV rest, Law forced her back to work at the spa that afternoon.

HV and XC eventually came to the authorities' attention. XC was arrested in a sting operation at Law's spa, and the police discovered HV hiding in a garage where she sought shelter after Law abandoned her. Law visited XC in jail and tried to get her to sign a form that Law said was a green card application, but actually would have given XC's power of attorney to Law. From information obtained in interviews of HV and XC, Hong Kong authorities arrested Law in October 2013.

Law was indicted on four charges: one count each of trafficking XC and HV for involuntary servitude in violation of

18 U.S.C. § 1590(a) and 18 U.S.C. § 2; one count of transporting XC for the purpose of prostitution in violation of 18 U.S.C. § 2421 and 18 U.S.C. § 2; and one count of using an interstate facility to promote prostitution in violation of 18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2.

At trial, Department of Homeland Security agents Philip Coduti and Angus Lowe testified for the government. Coduti's testimony included statements that the FBI was investigating a spa in Gary, Indiana, and that it believed Homeland Security was the appropriate agency to interview XC. Coduti described his interview of XC in which he learned that she did not intend to sign the power of attorney document Law had encouraged her to sign and she was a Chinese national who wanted to go home. Lowe testified local authorities told him HV may be part of a prostitution ring. He stated that during his interviews of HV, she informed him that she provided sex services at Law's spa and that she came to the United States to marry Toma.

Law objected as hearsay to those portions of the agents' testimonies told to them outside of court. The district court overruled the objection and admitted the statements for the non-hearsay purpose of describing the course of investigation, rather than for the truth of the matter asserted. The court also repeatedly instructed the jury that it could not consider these passages for their truth.

An affidavit that Law prepared to avoid further charges was also the subject of dispute. At trial she objected to its admission, arguing she could not have signed the affidavit because she was not in the United States at the time. Law set aside her objection after the government showed that Law was in the country when the affidavit was drafted. After

determining that Law had no further objections, the district court admitted statements from the affidavit.

Following a two-week trial, a jury convicted Law on all four counts in the indictment. Law's Sentencing Guidelines calculations included various enhancements and cross references[3] because she committed another crime during the trafficking offense, she forced HV and XC to engage in sexual acts out of fear, and she obstructed justice. Law made numerous objections to these enhancements and other calculations which the district court overruled. After considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Law to 360 months' imprisonment, below the Sentencing Guidelines range of life imprisonment and the statutory maximum of 660 months under 18 U.S.C. § 1590.

## II. Discussion

Law raises many challenges to the jury trial and to her sentence, but we focus on those that may have merit—her objections to some of the testimony of the agents, the admission of statements in her affidavit, the sufficiency of the evidence for her convictions, and her sentence. *Cf. United States v. Friedman*, 971 F.3d 700, 709–10 (7th Cir. 2020) ("A circumspect approach boosts credibility, while raising every conceivable challenge on appeal can dilute the persuasiveness of plausible arguments.").

### A. Testimony of Agents Coduti and Lowe

Law's most prominent argument is her appeal of the admission into evidence of portions of the testimonies of the

---

[3] A cross reference is an instruction to apply another offense guideline. U.S.S.G. § 1B1.5.

Department of Homeland Security agents. Specifically, Law continues to dispute that those agents were allowed to testify about statements others made to them during investigatory interviews. These statements described the course of the investigation, so to the district court they were not inadmissible hearsay. We review the district court's decision to admit this evidence for an abuse of discretion. *See United States v. Thomas*, 986 F.3d 723, 729 (7th Cir. 2021).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Federal Rule of Evidence 801(c)(1). The agents testified to statements made to them in interviews and conversations during their investigations. But not all such statements are hearsay. When an out-of-court statement is offered for its effect on the listener, and not for its truth, it is not hearsay. *Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019) (concluding that descriptions in affidavit were not hearsay because they were not offered for their truth but "to show that a competent officer aware of that information could conclude that there was reasonable suspicion"). A derivative of this principle is that "statements offered to 'establish the course of the investigation,' rather than to prove the truth of the matter asserted, are nonhearsay and therefore admissible." *United States v. Taylor*, 569 F.3d 742, 749 (7th Cir. 2009) (quoting *United States v. Akinrinade*, 61 F.3d 1279, 1283 (7th Cir. 1995)); *see also United States v. Marchan*, 935 F.3d 540, 546 (7th Cir. 2019). "Course of investigation" evidence is relevant because "if the jury would not otherwise understand why an investigation targeted a particular defendant, testimony [about the course of investigation] 'could dispel an accusation that the officers were officious intermeddlers staking out [the defendant] for nefarious purposes.'" *United States v.*

*Cruse*, 805 F.3d 795, 810 (7th Cir. 2015) (quoting *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004)).

Admitting these portions of the agents' testimonies was not an abuse of discretion. These statements helped connect the dots between the discovery of HV in the garage and Law's extradition from Hong Kong. The admitted testimony was co-pious, and this court has expressed concern about the scope of this type of non-hearsay. *See Marchan*, 935 F.3d at 546 ("[W]e are reluctant to permit 'course of the investigation' ra-tionale for fear of its abuse or misuse[.]") (internal quote omit-ted); *Silva*, 380 F.3d at 1020 (rejecting course of investigation rationale for admitting evidence when the evidence was not relevant except for its truth). But this complex investigation required explanation and context. It involved several busi-nesses, multiple witnesses, and spanned two continents. This case differs from *Silva* where the government sought to admit evidence describing the "course of investigation" that consisted solely of statements spoken by a non-testifying in-formant. *Id.* In *Silva*, this court decided that admitting such testimony was an error because it was some of the govern-ment's most persuasive evidence and could only be heard by the jury under the "course of investigation" rationale. *Id.* This suggested that although the government claimed to be offer-ing the testimony to explain the investigation, the evidence could not have been offered for any reason other than for its truth. *Id.* Importantly, unlike the testimony in *Silva*, the con-tested statements by the investigators here were corroborated by the testimony of HV and XC. So even if the government offered the testimony for its truth, it would have been cumu-lative of other uncontested evidence. Although the course of investigation evidence in this case was ample, its admission was not a subterfuge for the government to place

impermissible hearsay before the jury, and the probative value of the evidence in explaining the complex investigation outweighed any unfair prejudice to Law.

The district court also repeatedly and correctly instructed the jury that the portions of the agents' testimony on these subjects could be considered only for the limited purpose of explaining the investigation and not for their truth. *See United States v. Eberhart*, 434 F.3d 935, 939 (7th Cir. 2006) (admitting evidence as showing the course of the authorities' investigation and noting that "the court gave a thorough limiting instruction to the jury after the testimony[.]"). When the evidence was first admitted, the district court instructed the jurors that:

> This [evidence] is being offered for the effect that it had on Agent Coduti. He doesn't know if it's true or not. He's just acting based on what he's told. It's not being offered for the truth of it. It's being offered for the limited purpose to explain the effect it had on the hearer.[4]

Similar limiting instructions to the jury were repeated at least twice more during the trial. Finally, as noted above, much of the testimony concerned matters that HV and XC testified to themselves, so any error in admitting this evidence was likely harmless because of its cumulative nature. *Marchan*, 935 F.3d at 546 ("even if Chavelas's statements were hearsay, any error is harmless because TFO Gomez and Agent Putman already testified to the issues challenged, corroborating his testimony.")

---

[4] R. 498, p. 89.

**B. Law's Affidavit**

Law next contends that the foundation of her affidavit was insufficient because nobody saw her sign it. She set to the side her original objection on this ground in the district court, so we review for plain error that court's decision to admit portions of the affidavit.[5] *United States v. LeBeau*, 949 F.3d 334, 343 (7th Cir. 2020).

Law asserts this affidavit can only be authenticated by a witness who saw her write it, but that is not so. Federal Rule of Evidence 901 provides for several ways to authenticate a document. Under Rule 901(b)(4) a document can be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Law's affidavit was specific and detailed. It contained information about HV's pregnancy, the person who introduced Law and XC, and the spa's employment applications. This was all distinctive material that the district court could rely on to establish the document's authenticity. Law does not point to any evidence that called the affidavit's authenticity into doubt, and she has not shown plain error in its admission. So the district court properly admitted statements from the affidavit.

**C. Sufficiency of the Evidence**

Law challenges the sufficiency of the evidence to support her convictions on those counts which charged her with trafficking to force labor. This court reviews challenges to the

---

[5] Contrary to Law's assertion in her brief, only initially did she object to the affidavit on the ground that she could not have written it. This was Law's sole objection to the affidavit; she did not dispute any other aspect of its admission or use in the district court.

sufficiency of the evidence in the light most favorable to the government and upholds a conviction if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]'" *United States v. Calimlim*, 538 F.3d 706, 714 (7th Cir. 2008) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

To convict an individual of this crime, the government must prove that Law forced HV and XC to work for her, among other ways, "by means of serious harm or threats of serious harm[.]" 18 U.S.C. § 1589. Law asserts there was insufficient evidence to show that she ever threatened HV or XC with serious harm. But "serious harm" is defined broadly in § 1589 as "any harm, whether physical or nonphysical … sufficiently serious … to compel a reasonable person … to perform or to continue performing labor or services[.]" A rational jury could conclude from the evidence at trial that HV and XC were at minimum subjected to immigration, financial, and psychological harm. Given the graphic nature of the testimony presented to the jury at trial, Law's assertion that she did not threaten HV and XC with serious harm is not persuasive for several reasons.

First, in certain contexts, threats to one's immigration status can constitute serious harm. For instance, confiscating an immigrant's passport meets this threshold. *See Calimlim*, 538 F.3d at 713. The Second Circuit has even observed that threats of deportation can, combined with other circumstances, also constitute a serious harm. *See Adia v. Grandeur Mgmt.*, 933 F.3d 89, 93 (2d Cir. 2019). Law confiscated HV and XC's passports and subjected them to nearly constant threats of deportation. These actions constituted threats of serious harm.

Second, Law's financial threats against HV and XC also constitute threats of serious harm. *See Calimlim*, 538 F.3d at 713. Law withheld wages from HV and XC. She also fabricated a story about Toma's debt to coerce HV to provide sex services to customers. Taken together or separately, these acts threatened serious harm against HV and XC.

Third, HV and XC also suffered psychological harm. *See* 18 U.S.C. § 1589(c)(2) ("The term 'serious harm' means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm … ."). Law constantly monitored HV and XC on surveillance cameras and made them fear physical harm. Law's treatment of HV during and after her miscarriage demonstrates the cruelty of her dealings with these victims. From this evidence, a rational jury could conclude that Law was guilty beyond a reasonable doubt of trafficking with respect to forced labor in violation of 18 U.S.C. § 1589.

**D. Sentencing**

Law contends the district court made numerous errors in calculating her Sentencing Guidelines range. We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Guidry*, 817 F.3d 997, 1007–08 (7th Cir. 2016). Although the Sentencing Guidelines are advisory, the district court must still correctly calculate the guidelines range. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). Only three of Law's objections warrant discussion. The others all hinge on factual disputes that do not survive clear error review. *United States v. Hawkins*, 777 F.3d 880, 885 (7th Cir. 2015) (district court's resolution of factual dispute when applying Guidelines subject to clear error review).

Law first challenges the district court's application of the U.S.S.G. § 2H4.1(b)(4)(B) cross reference, which applies "[i]f any other felony offense was committed during the commission of, or in connection with, the peonage or involuntary servitude offense[.]" This occurs if the "other felony" has its own Sentencing Guideline. *See Calimlim*, 538 F.3d at 716. If applicable, this cross reference results in either a two-level increase to the involuntary servitude offense, or a two-level increase to "the offense level from the offense guideline applicable to that other offense[.]" U.S.S.G. § 2H4.1(b)(4)(B).

Here, the district court properly applied § 2H4.1(b)(4)(B) because Law also violated 18 U.S.C. § 2421, which has its own Sentencing Guideline (U.S.S.G. § 2G1.1). Section 2421 prohibits anyone from transporting "any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense[.]" The district court concluded that Law did just that by having HV and XC enter the United States and by transporting them to Indiana where they were forced to provide sex services at her spas.

Law next argues the district court improperly applied a cross reference under U.S.S.G. § 2G1.1(c)(1). Section 2G1.1(c)(1) applies a cross reference to § 2A3.1 if a defendant committed conduct prohibited by 18 U.S.C. § 2242, which proscribes, among other things, knowingly causing "another person to engage in a sexual act by threatening or placing that other person in fear[.]" The word "fear" in § 2242 is defined broadly. *See Guidry*, 817 F.3d at 1008. As noted above, Law placed HV and XC in fear of physical, financial, and psychological harms, as well as coerced HV and XC to provide sex

services. Based on the extensive evidentiary record, the district court properly applied the § 2G1.1(c)(1) cross-reference.

Law insists the district court improperly applied the enhancement for obstruction of justice under U.S.S.G. § 3C1.1, but this argument also falls short. Section 3C1.1 applies if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction[.]" And the application notes make evident that the enhancement covers the commission of perjury. U.S.S.G. § 3C1.1 cmt. n.4(G). Perjury occurs "when a witness testifying under oath gives false testimony about a material matter with the willful intent to provide false testimony, instead of as a result of confusion, mistake, or faulty memory." *United States v. Gonzalez-Mendoza*, 584 F.3d 726, 730 (7th Cir. 2009) (citation omitted).

The district court properly applied the enhancement because Law committed perjury in her affidavit. In statements from that affidavit read during trial, Law claimed her businesses were not engaged in prostitution and that she instructed her workers not to engage in prostitution. Overwhelming trial evidence contradicts these statements.[6] For example, HV and XC both testified that Law's spas provided sex acts to paying customers and that Law knew about and encouraged this.

---

[6] Another ground for applying the enhancement for obstruction of justice was Law's visit to XC in jail and attempt to fraudulently coerce her into signing the power of attorney form. See U.S.S.G. § 3C1.1 cmt. n.4(B).

Regardless of the Guidelines calculation, Law also argues that her sentence was substantively unreasonable. This court reviews the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Nania*, 724 F.3d 824, 839 (7th Cir. 2013). Under 18 U.S.C. § 3553(a), the district court must impose a sentence that is "sufficient, but not greater than necessary[.]" Further, "the Supreme Court has taught that sentencing judges have discretion under § 3553(a) to give non-guideline sentences for reasons specific to the defendant or based on policy disagreements with the Guidelines." *United States v. Vasquez-Abarca*, 946 F.3d 990, 994 (7th Cir. 2020). "A below-guidelines sentence, like a within-guidelines one, is presumed reasonable against a defendant's challenge that it is too high." *United States v. Chagoya-Morales*, 859 F.3d 411, 424 (7th Cir. 2017) (citation omitted).

The district court did not abuse its discretion in imposing Law's 360-month sentence. Law faced an uphill battle because a below-Guidelines sentence is entitled to the presumption of reasonableness. *See United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of below-range sentences that would be unreasonably high.") The district court analyzed, in detail, each of the § 3553(a) factors. The court determined that Law had engaged in a "modern-day form of slavery," but it reduced the sentence when considering all the other factors and the parties. Given these circumstances, including the much higher Guidelines range that could have applied, the district court pronounced a reasonable sentence for Law.

### III. Conclusion

Law raises many challenges to her trial and sentencing, but the district court supported its decisions with substantial

and correct reasoning. We therefore AFFIRM the judgment of the district court in all respects.