## NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 15, 2022
Decided September 22, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 22-1242

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:20-CR-00123(1) |
| JOHN GONZALEZ, *Defendant-Appellant*. | Manish S. Shah, *Judge*. |

## O R D E R

John Gonzalez, previously convicted of a felony, purchased a gun from an undercover police officer. A jury found him guilty of unlawfully possessing a firearm, 18 U.S.C. § 922(g)(1), and he was sentenced to 27 months in prison. Gonzalez filed a notice of appeal, but his appointed counsel asserts that the appeal is frivolous and moves to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Gonzalez has not responded to the motion. *See* CIR. R. 51(b). Counsel explains the nature of the case and addresses the potential issues that an appeal of this kind might be expected to involve,

and because the analysis appears thorough, we limit our review to the subjects that counsel discusses. *See United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014).

Gonzalez attended a gun-rights rally where he met a man who was secretly an FBI informant. The two discussed how Gonzalez could acquire a firearm even though he was barred from possessing one because of his two-decade old felony conviction for attempted homicide. Gonzalez arranged to purchase a gun from one of the informant's contacts, who was really an undercover police officer. Gonzalez bought a gun from the officer in a hotel room, and the government charged Gonzalez with violating § 922(g).

Gonzalez made two relevant pretrial motions. First, he asked the district court to order the government to disclose the informant's identity and provide other information about him, such as his date of birth or social security number. Gonzalez wanted this information to find evidence he could use to impeach the informant's reliability. The government responded that it would disclose the informant's identity at least 30 days before trial but that Gonzalez did not have a right to the other information, and the court agreed on both counts. Second, Gonzalez filed a motion in limine to bar references to his YouTube channel at the trial because of the risk of unfair prejudice. *See* FED. R. EVID. 403. The channel included several videos of him shouting vulgarities at police officers. The court denied the motion but noted its ruling was not definitive: "[W]e'll have to see how it plays out, and I'll make a ruling during trial."

At trial, two references to Gonzalez's YouTube channel occurred during the government's case-in-chief. First, the government called the undercover officer (the seller) and the case agent and through them introduced recordings of conversations Gonzalez had with the informant and undercover officer. In some, Gonzalez mentioned his channel. Second, the case agent testified that he identified Gonzalez's voice on the recordings based on videos from the channel. Gonzalez did not object to either mention.

Other evidence entered against Gonzalez included his phone records and records from Google, both of which the government had subpoenaed; Gonzalez had not filed a motion to suppress or to exclude the evidence. The government did not call the informant—whose identity it had, by then, disclosed—and Gonzalez later declined to do so, too.

Gonzalez testified in his defense. He described his YouTube videos as "documentaries" in which he "tr[ied] to educate the community [about] their rights." He also testified to facts supporting an entrapment defense. (Because the district court had allowed him to raise this defense, the government had to prove either that

Gonzalez was predisposed to commit the crime or was not induced by a government agent. *United States v. Mayfield*, 771 F.3d 417, 439–40 (7th Cir. 2014) (en banc).) Gonzalez said that the government induced him to purchase the gun when he otherwise would not have done so because the informant promised him a "waiver" from laws prohibiting his possession of a firearm. (As he conceded on cross-examination, the possibility of a waiver is not discussed in any of the recorded conversations.)

After this testimony, the government moved to admit portions of certain YouTube videos, arguing they impeached Gonzalez's testimony and showed his predisposition to purchase a firearm. Over Gonzalez's renewed Rule 403 objection, the district court concluded the videos could be probative of, among other things, his predisposition for possessing a firearm. The risk of unfair prejudice did not require exclusion, the court explained, because Gonzalez had discussed the videos in detail on direct examination. When questioned about the videos on cross-examination, Gonzalez denied wanting a gun to protect himself while making them.

Nevertheless, the prosecutor stated in closing argument that Gonzalez wanted one "for protection" and "had to re-strategize his confrontations with law enforcement" that the videos depicted. Gonzalez did not object to these remarks. The jury, which the district court instructed on the entrapment defense, found Gonzalez guilty, and the court later denied his motion for judgment of acquittal.

At sentencing, the district court applied a two-level adjustment to Gonzalez's offense level under the Sentencing Guidelines based on its conclusion that he committed perjury and thus obstructed justice. U.S.S.G. § 3C1.1. The court found that Gonzalez lied about the informant's promise of a waiver to strengthen his entrapment defense. (In reality, the court found, Gonzalez believed the seller was a "shady arms dealer," and he "plainly accepted and understood that the purchase … was under the table.") Moreover, because Gonzalez understood the details of purchasing a gun and his prohibited status, the court found that the lie was willful. With that adjustment, Gonzalez faced a guidelines range of 21 to 27 months' imprisonment.

The district court sentenced Gonzalez at the high end of the guidelines range based on several factors: Gonzalez's unlawful possession of a gun showed disrespect for the law and was dangerous because he often confronted police; he had a violent, though remote, criminal history; and he required specific deterrence. The court noted Gonzalez's expressions of remorse and positive record in prison as mitigating factors.

Counsel first considers challenging the constitutionality of § 922(g)(1) as applied to Gonzalez and concludes that the argument would be frivolous. Since the brief was filed, however, the Supreme Court interpreted the Second Amendment in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). There, the Court held that, when assessing the constitutionality of a firearms regulation, the question is only whether the restriction is consistent with "the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. We have acknowledged previously that the historical evidence is mixed about barring *all* felons from possessing guns. *See, e.g., Kanter v. Barr*, 919 F.3d 437, 445–47 (7th Cir. 2019), *abrogated on other grounds by N.Y. State Rifle*, 142 S. Ct. 2111; *see also United States v. Skoien*, 614 F.3d 638, 650 (7th Cir. 2010) (Sykes, J., dissenting). But whether a government can forbid *violent* felons from possessing a firearm has not been meaningfully questioned by courts to date. *See, e.g., Kanter*, 919 F.3d at 451 (Barrett, J., dissenting). Moreover, the Justices have declined to question laws requiring background checks or barring felons from possessing firearms. *See N.Y. State Rifle*, 142 S. Ct. at 2138 n.8; *id.* at 2162 (Kavanaugh, J., concurring); *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Gonzalez's offense— attempted murder—was violent, and we are aware of no authority supporting an argument that someone in his position historically had the right to possess a gun. Thus, it would be frivolous to argue that § 922(g)(1) is unconstitutional as applied to him.

Next, counsel considers challenging the denial of Gonzalez's motion to reveal personal identifying information (e.g., social security number) about the informant. A prosecutor must disclose evidence that a criminal defendant can use to impeach the government's witnesses. *United States v. Bagley*, 473 U.S. 667, 676 (1985) (first citing *Giglio v. United States*, 405 U.S. 150, 154 (1972); and then quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)); *Socha v. Richardson*, 874 F.3d 983, 988 (7th Cir. 2017). But, at best, the information may have *led* him to impeachment evidence; it was not impeachment material itself. Gonzalez does not have a right to the kind of general pretrial discovery he requested, *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), or to information to facilitate a "mere fishing expedition." *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994). Thus, it would be frivolous to argue that protecting the informant's private information violated Gonzalez's rights.

We also agree with counsel that it would be frivolous to challenge the district court's refusal to require earlier disclosure of the informant's identity. The government has a privilege against disclosing who its informants are. *See Roviaro v. United States*, 353 U.S. 53, 59–60 (1957); *United States v. Leonard*, 884 F.3d 730, 735 (7th Cir. 2018). The privilege can give way to the right to a fair trial, but defendants must show that this

information is needed for their defense. *Leonard*, 884 F.3d at 735. The government agreed to disclose the informant's identity at least 30 days before trial (and it did). Gonzalez's only protest was that the COVID-19 pandemic made the deadlines ambiguous, not that earlier disclosure was "essential to a fair determination of [his] cause." *Roviaro*, 353 U.S. at 61. Further, the informant never testified against Gonzalez. It would be frivolous to argue that the court abused its discretion or that Gonzalez was prejudiced. *Leonard*, 884 F.3d at 735.

Next, we agree with counsel that arguing that the district court erred by admitting the recorded conversations and data obtained from Google or phone companies would be frivolous. Gonzalez did not move to suppress or exclude any of this evidence, which precludes appellate review. *United States v. Farmer*, 38 F.4th 591, 605 (7th Cir. 2022); FED. R. CRIM. P. 12(b)(3)(C).

Counsel also correctly concludes that it would be frivolous to assert error based on references to Gonzalez's YouTube channel and the admission of some of its contents into evidence. Counsel starts with the witnesses' mentions of the channel during the government's case-in-chief. Gonzalez did not object—despite the court's invitation to renew his motion in limine at an appropriate time. He thus failed to preserve this issue for appeal. *See Pittman ex rel. Hamilton v. Cnty. of Madison*, 970 F.3d 823, 829 (7th Cir. 2020) (citing *United States v. Addo*, 989 F.2d 238, 242 (7th Cir. 1993)).

Though Gonzalez objected to the later entry of the YouTube video excerpts into evidence, we agree with counsel that a challenge under Rule 403 would be frivolous. The district court admitted these videos because of their relevance to Gonzalez's motive and his predisposition to possess a firearm, the latter of which is part of the government's burden to overcome an entrapment defense. And although the videos arguably show Gonzalez in a bad light because of his language and behavior, the risk of unfair prejudice was low. As the court explained, Gonzalez had a chance to explain the videos himself and ameliorate any prejudicial effect. *United States v. Chanu*, 40 F.4th 528, 545 (7th Cir. 2022); *United States v. Smith*, 502 F.3d 680, 687 (7th Cir. 2007). (Indeed, he had already done so in detail on direct examination.) Given the deference we afford a district court's balancing under Rule 403, *United States v. Norwood*, 982 F.3d 1032, 1051–52 (7th Cir. 2020), arguing that admitting the videos was erroneous would be futile.

Counsel next considers challenging the prosecutor's statement that Gonzalez wanted a gun to protect himself while filming his confrontational videos even though he testified otherwise. A prosecutor misstating the evidence can be improper conduct. *United States v. Wolfe*, 701 F.3d 1206, 1214 (7th Cir. 2012). But because Gonzalez did not

contemporaneously object, we would review for plain error—which requires Gonzalez to show, among other things, that the outcome would have been different but for the government's remark. *Id.* at 1211; *United States v. Jackson*, 898 F.3d 760, 766 n.16 (7th Cir. 2018). It would be frivolous to argue that this misstatement (if any) made a difference. Gonzalez had a chance to counter it during his closing argument right after the government's, and, as we discuss below, the government's case against Gonzalez was strong. *See Jackson*, 898 F.3d at 765. Moreover, the court instructed the jury that "lawyers' statements and arguments are not evidence," and we presume the jury followed that instruction. *United States v. Marchan*, 935 F.3d 540, 548 (7th Cir. 2019).

Counsel also rightly concludes that it would be frivolous to challenge the denial of Gonzalez's motion for a judgment of acquittal, which he based on his entrapment defense. Once Gonzalez was allowed to raise the defense, the government had to prove either that Gonzalez was predisposed to commit the crime or that there was no inducement. *Mayfield*, 771 F.3d at 439–40. Recorded conversations showed Gonzalez's eagerness to buy a gun, whereas support for inducement was scarce. Gonzalez testified that the government induced him because the informant promised him a "waiver" from the law prohibiting his possession. As Gonzalez admitted, the recorded conversations do not corroborate this testimony, and there is no other evidence of inducement. Thus, it would be meritless to argue that no reasonable jury could reject the entrapment defense because we would review the record in the light most favorable to the government. *United States v. Price*, 28 F.4th 739, 752 (7th Cir. 2022).

Turning to sentencing, counsel considers challenging the district court's application of the two-level increase to his offense level for obstruction of justice based on his testimony about the purported offer of a waiver. *See* U.S.S.G. § 3C1.1; *id.* cmt. n.4(B) (perjury is covered conduct). The judge found the necessary factual predicates: false testimony, materiality, and willful intent. *Price*, 28 F.4th at 756. We would review these findings for clear error, *see id.* at 754, and, like counsel, we see no basis for questioning them. Counsel identifies no other potential procedural errors at sentencing.

A substantive challenge to Gonzalez's sentence also would be frivolous. The prison sentence is within the properly calculated guidelines range, and so we would presume that it is reasonable. *United States v. Beltran-Leon*, 9 F.4th 485, 491 (7th Cir. 2021). The court adequately considered Gonzalez's history and characteristics, the nature and circumstances of his offense, and the need to deter him from future criminal conduct and promote his respect for the law. *See id.* at 492; 18 U.S.C. § 3553(a). Thus, we agree with counsel that Gonzalez would not be able to rebut that presumption.

Finally, counsel considers the viability of a claim of ineffective assistance of counsel, but any such claim generally should be reserved for collateral review, where a more complete record could be developed. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Cates*, 950 F.3d 453, 456–57 (7th Cir. 2020).

We GRANT counsel's motion to withdraw and DISMISS the appeal.